## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MAINE

| | |
|---|---|
| JL Powell Clothing LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>Joshua L. Powell, individually and d/b/a The Field Outfitting Company, and Brownells, Inc., also d/b/a The Field Outfitting Company,<br><br>        Defendants. | Docket No. 2:13-cv-00160-NT |

## DEFENDANT JOSHUA L. POWELL'S MOTION TO DISMISS
## OR TRANSFER WITH INCORPORATED MEMORANDUM OF LAW

Dated: May 10, 2013

Timothy Bryant
Benjamin Piper
Preti, Flaherty, Beliveau & Pachios LLP
One City Center
Portland, ME 04101
207.791.3000
tbryant@preti.com
bpiper@preti.com

Joseph Collins (admitted *pro hac vice*)
Gina Durham (admitted *pro hac vice*)
DLA Piper LLP (US)
203 North La Salle Street, Suite 1900
Chicago, IL 60601
312.368.4000
joseph.collins@dlapiper.com
gina.durham@dlapiper.com

*Attorneys for Defendant Joshua L. Powell,*
*individually and d/b/a The Field Outfitting*
*Company*

5161107.1

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................. 1

II.     Background ................................................................................................. 2

    A.     The Contribution Agreement ............................................................. 2

    B.     The Employment Agreement/Inventions Agreement ........................... 3

    C.     The Separation Agreement ................................................................ 4

    D.     Plaintiff's Alleged Trademarks .......................................................... 4

    E.     Mr. Powell Launches "The Field" ....................................................... 5

    F.     The Field's Maine Supplier ................................................................ 5

    G.     Plaintiff Brings The Instant Complaint ............................................... 5

III.    Argument .................................................................................................... 6

    A.     Plaintiff Fails To Plead A Proper Basis For The Exercise Of Personal
        Jurisdiction Over Mr. Powell ............................................................. 6

    B.     This Court Should Transfer This Action To The Northern District Of
        Illinois  Under 28 U.S.C. § 1404(a) For The Convenience Of The Parties
        And Witnesses ................................................................................. 10

    C.     Plaintiff Lacks Standing To Bring The Claims In Counts VI–VIII .................... 13

    D.     The Trademark Claims, Counts I Through V, Fail As A Matter Of Law ........... 14

    E.     Count VI Fails To State A Claim For Specific Performance ............................. 17

    F.     Counts VII And VIII Fail To State A Claim For Breach Of The
        Employment And Separation Agreements, Respectively ................................... 19

III.    Conclusion ................................................................................................... 20

5161107.1

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*,
    871 A.2d 428 (Del. 2005) ........................................................................20

*Ahmed v. Mohammad*,
    No. 08-257-P-H, 2008 WL 4457866 (D. Me. Oct. 1, 2008)..............................11, 12

*Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*,
    27 A.3d 522 (Del. 2011) ..........................................................................20

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)........................................................................16, 19

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007);........................................................................16, 19

*BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.*,
    846 F. Supp. 2d 307 (D. Me. 2012) ...................................................................8

*Broady v. Hoppen*,
    No. 12-cv-79-SM, 2012 WL 3731339 (D.N.H. Aug. 28, 2012)............................7, 8

*Burger King Corp. v. Rudzewicz*,
    471 U.S. 462 (1985)................................................................................8

*Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*,
    70 F.3d 267 (2d Cir. 1995)........................................................................17

*Coady v. Ashcraft & Gerel*,
    223 F.3d 1 (1st Cir. 2000)........................................................................10

*Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*,
    125 F.3d 28 (2d Cir. 1997)........................................................................16

*Del. Fin. Mgmt. Corp. v. Vickers*,
    No. Civ.A. 96C-10-032, 1999 WL 458633 (Del. Super. June 9, 1999) .................................18

*Edens Techs., LLC v. Kile, Goekjian, Reed & McManus, PLLC*,
    671 F. Supp. 2d 170 (D. Me. 2009) ...........................................................11, 12

*EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.*,
    228 F.3d 56 (2d Cir. 2000)........................................................................15

5161107.1

*ETW Corp. v. Jireh Pub., Inc.*,
    332 F.3d 915 (6th Cir. 2003) ...........................................................................16

*FinanceAmerica Private Brands, Inc. v. Harvey E. Hall, Inc.*,
    380 A.2d 1377 (Del. Super. 1977) ...................................................................13

*Glenwood Farms, Inc. v. O'Connor*,
    666 F. Supp. 2d 154 (D. Me. 2009) ...................................................................6

*Henderson v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n*,
    No. 2:11-cv-86-DBH, 2011 WL 2194439 (D. Me. June 6, 2011) ...................11, 12

*Hensley Mfg. v. ProPride, Inc.*,
    579 F.3d 603 (6th Cir. 2009) .............................................................14, 15, 16, 17

*In re Colonial Mortg. Bankers Corp.*,
    324 F.3d 12 (1st Cir. 2003) ........................................................................14, 15

*Int'l Shoe Co. v. Wash.*,
    326 U.S. 310 (1945).............................................................................................9

*JA Apparel Corp. v. Abboud*,
    682 F. Supp. 2d 294 (S.D.N.Y. 2010)...........................................................16, 17

*KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.*,
    543 U.S. 111 (2004)...........................................................................................14

*Magallon v. Livingston*,
    453 F.3d 268 (5th Cir. 2006) ............................................................................13

*Mass. Sch. of Law at Andover, Inc. v. ABA*,
    142 F.3d 26 (1st Cir. 1998)..................................................................................7

*Multibene Ingredients Oy Ltd. v. Sturm Foods Inc.*,
    658 F. Supp. 2d 250 (D. Me. 2009) ...........................................................10, 11, 12

*Negron-Torres v. Verizon Commc'ns, Inc.*,
    478 F.3d 19 (1st Cir. 2007)..................................................................................6

*Nowak v. Tak How Invs., Ltd.*,
    94 F.3d 708 (1st Cir. 1996)..................................................................................8

*PFIP, LLC v. Planet Fitness Enters., Inc.*,
    No. Civ. 04-250-JD, 2004 WL 2538489 (D.N.H. Nov. 10, 2004) ...........................8

*PFIP, LLC v. You-Fit, Inc.*,
    No. 08-271-JL, 2009 WL 1121359 (D.N.H. Apr. 27, 2009) ................................10

- iii -

5161107.1

*Phillips Exeter Acad. v. Howard Phillips Fund, Inc.,*
   196 F.3d 284 (1st Cir. 1999) ...................................................................................9

*Phillips v. Prairie Eye Ctr.,*
   530 F.3d 22 (1st Cir. 2008) ..........................................................................6, 7, 8, 9

*Pirone v. MacMillan, Inc.,*
   894 F.2d 579 (2nd Cir. 1990) ................................................................................17

*Sawtelle v. Farrell,*
   70 F.3d 1381 (1st Cir. 1995) ....................................................................................9

*United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.,*
   960 F.2d 1080 (1st Cir. 1992) ..................................................................................9

*Whelan v. Abell,*
   953 F.2d 663 (D.C. Cir. 1992) ...............................................................................13

## STATUTES

15 U.S.C. § 1115(b)(4) ...................................................................................................14

28 U.S.C. § 1404(a) ..................................................................................................1, 10

14 M.R.S.A. § 704-A(1) ...................................................................................................6

## RULES

Federal Rule of Civil Procedure 8(a) ......................................................................10, 19

Federal Rule of Civil Procedure 12(b)(2) .........................................................................1

Federal Rule of Civil Procedure 12(b)(6) .........................................................................1

Federal Rule of Civil Procedure 17(a)(1) .......................................................................13

## OTHER AUTHORITIES

17B C.J.S. *Contracts* § 602 (2013) ................................................................................18

*Restatement (Third) of Unfair Competition* § 28 cmt. *c* ...............................................16

1 J. THOMAS MCCARTHY, THE RIGHTS OF PUBLICITY AND PRIVACY § 6145 (2d ed. 2012) ..........17

6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE,
   FEDERAL PRACTICE & PROCEDURE § 1554 (2d ed. 2006) .......................................13

5161107.1

Defendant Joshua L. Powell, individually and d/b/a The Field Outfitting Company ("Mr. Powell"), respectfully moves this court for an order dismissing the Complaint under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6), or to transfer venue under 28 U.S.C. § 1404(a).

## I.      INTRODUCTION

Two glaring deficiencies warrant dismissal of the Complaint.  First, the facts and circumstances alleged in the Complaint have a tenuous connection, at best, with Maine.  Indeed, the only reference to Maine – set forth for the first time in paragraph 52 of the Complaint – is the allegation that one of Defendants' product suppliers happens to be located in Maine.  This alleged fact, standing alone, is grossly insufficient for Plaintiff to meet its burden of establishing personal jurisdiction.  And even if the existence of a lone Maine supplier is enough to establish personal jurisdiction (and it is not), there are far more convenient forums available to the parties, including Chicago, Illinois, the venue specifically agreed to in the Separation Agreement.

Second, Plaintiff fails to allege that it has standing, as a non-party, to enforce the contracts at issue.  The best Plaintiff can muster are a few sentences that a company named Blue Highway purchased certain assets of one of the real parties in interest, and purportedly contributed those assets to Plaintiff.  As set forth below, however, the contracts in dispute require assignments and, in some instances, written consents to such assignment.  Absent well pleaded facts establishing the requisite standing, the contract-based claims are subject to dismissal.

The Complaint also fails to state a claim.  As set forth more fully below, Mr. Powell's grant to JL Powell LLC of the right to use his name – and only his name – in the Contribution Agreement was superseded by the Separation Agreement subsequently entered into by the same parties.  The Separation Agreement, as negotiated, acknowledged that Mr. Powell may work for a competing business as of April 2013 and could challenge JL Powell's use of his likeness beginning in January 2014.  No contractual restriction exists as to Mr. Powell's use of him own

- 1 -

name, image or likeness.  In addition, the rights granted by Mr. Powell in the Contribution Agreement were unlimited in duration and, as such, were terminable at will.

Regarding the trademark claims, Plaintiff does not allege that the name of Mr. Powell's new company, *i.e.*, "The Field," causes confusion with "JL Powell."  Instead, Plaintiff argues that Mr. Powell's signature to two articles that he authored in The Field's advertising materials violates trademark law.  The doctrine of fair use permits Mr. Powell to use his personal name a descriptive manner, however, and a signature to an article is a classic example of fair use.

There is no dispute that Mr. Powell is presently free to compete in Plaintiff's industry and soon will be able to challenge Plaintiff's use of his likeness.  Nothing in the contracts prohibits Mr. Powell's use of his own image, and Mr. Powell is permitted under the fair use doctrine to use his own name in a descriptive manner.  Plaintiff cannot artificially extend the non-compete clause through the guise of purported trademark claims.  That would create a broad, perpetual non-compete that is legally unenforceable.  The Complaint should be dismissed in its entirety.

## II.    BACKGROUND

### A.    The Contribution Agreement

Mr. Powell founded JL Powell Inc., a company that sold high-end outdoor goods and apparel. (Compl. ¶ 7)  In 2010, Blue Highway Holdings III, LLC ("Blue Highway") purchased JL Powell Inc. (Compl. ¶ 13)  In connection with the sale, JL Powell Inc. entered into a Contribution Agreement with Blue Highway's newly-formed entity, "JL Powell LLC." (Compl. ¶ 15; Contribution Agreement, Ex. 5 to Willard Decl. (ECF No. 3-6))  JL Powell Inc. also agreed to change its name to JLP Retail Holding Company ("JLP"). (Compl. ¶ 18)

In Paragraph 7.1(b) of the Contribution Agreement, Mr. Powell granted JL Powell LLC an exclusive license "to use his ***name and endorsement*** to exploit, turn to account, advertise, and otherwise profit from [JL Powell LLC's] goods and services bearing such name, image, and/or

endorsement." (Compl. ¶ 20; Contribution Agreement ¶ 7.1(b) (emphasis added))  Mr. Powell also agreed that he would not "use his name or permit any other person or entity to use his **name**, including but not limited to any right to use his **name** under the doctrine of fair use, in connection with any business competitive in any respect to [JL Powell LLC] or any of its affiliates and/or subsidiaries." (*Id.* (emphasis added))  The Contribution Agreement does not prevent Mr. Powell from using his own image or likeness in competition with JL Powell LLC. The Contribution Agreement does not provide a duration for the license in Paragraph 7.1(b).

Paragraph 12.8 of the Contribution Agreement provides that none of the rights under the Agreement are assignable, whether by operation of law or otherwise, without the written consent of JLP.  There are no allegations in the Complaint that JLP agreed to assign to Plaintiff any rights under the Contribution Agreement, including the right to use Mr. Powell's name.  There are also no allegations that Mr. Powell consented to assignment of the right to use his name, which is required under applicable law.

## B.   The Employment Agreement/Inventions Agreement

On November 1, 2011, Mr. Powell and JL Powell LLC entered into an amended and restated employment agreement ("Employment Agreement"). (Employment Agreement, Ex. 9 to Willard Decl. (ECF No. 3-10))  Mr. Powell also entered into a Proprietary Information and Inventions Agreement ("Inventions Agreement") with JL Powell LLC whereby Mr. Powell agreed that all proprietary information learned or developed by Mr. Powell is the property of JL Powell LLC. (Compl. ¶ 31; Inventions Agreement, Ex. 10 to Willard Decl. (ECF No. 3-11)) Neither the Employment Agreement nor the Inventions Agreement has any provision regarding the use of Mr. Powell's name, image, or likeness.  The Employment Agreement contained a non-competition clause for a period of one year following termination. (Employment Agreement ¶ 5(a))  Plaintiff does not allege that Mr. Powell breached the Inventions Agreement in any way.

- 3 -

## C.    The Separation Agreement

On April 2, 2012, JL Powell LLC terminated Mr. Powell's employment. (Compl. ¶¶ 34, 48)  In connection with Mr. Powell's termination, the parties entered into a Separation Agreement. (Compl. ¶ 34; Separation Agreement, Ex. 11 to Willard Decl. (ECF No. 3-12)) Under Paragraph 5(b) of the Separation Agreement, Mr. Powell agreed that he would not take any action to interfere with JL Powell LLC's use of his likeness during the calendar years of 2012 and 2013.  Mr. Powell further agreed to continue the one-year restrictive covenant set forth in his Employment Agreement. (*See* Separation Agreement ¶ 16)  <u>Thus, under the Separation Agreement Mr. Powell has the express right to compete with JL Powell LLC after April 2, 2013, and can challenge JL Powell LLC's use of his likeness after December 31, 2013.</u>

Paragraph 16 provides that the Separation Agreement supersedes all prior written agreements between the parties with respect to its subject matter, except for certain restrictive covenants in the Employment Agreement and other agreements that Mr. Powell entered into with JL Powell LLC "regarding confidentiality, non-disclosure of information or property, non-competition or non-solicitation."   Paragraph 14 provides that JL Powell LLC may assign its rights thereunder, but there are no allegations in the Complaint that JL Powell LLC assigned its rights to Plaintiff.   Paragraph 17 provides that any dispute arising from the Separation Agreement, except for those seeking injunctive or equitable relief, shall be settled by arbitration in Chicago, Illinois.

## D.    Plaintiff's Alleged Trademarks

Plaintiff allegedly registered two trademarks at issue in this action: one for "J.L. Powell" for use on various clothing items and one for "The Sporting Life" for use on various clothing items. (Compl. ¶¶ 23, 27)  Plaintiff does not allege that any Defendant infringed on the "The Sporting Life" trademark.  As for the "J.L. Powell" trademark, Plaintiff's trademark registration

states that the mark "consists of standard characters without any claim to any particular font style, size, or color." (*See* Ex. 6 to Willard Decl. at 1 (ECF No. 3-7))  Plaintiff's trademark registration does not cover publications of any sort, nor does it cover catalog services. (*See id.*)

### E.    Mr. Powell Launches "The Field"

"In early April 2013," Plaintiff allegedly discovered that Mr. Powell had launched a new company called The Field. (Willard Decl. ¶ 27)  Plaintiff complains that in The Field catalog, Mr. Powell signed his name as an author of two articles: "The Passion To Explore" and "The Salt." (The Field Catalog at 2, 68, Ex. 12 to Willard Decl. (ECF No. 3-13))  Mr. Powell signed his name to the articles as "Josh Powell" and "J. Powell," respectively. (*Id.*)  A small photograph of Mr. Powell appeared at the top of the first article. (The Field Catalog at 2)  Neither the term "Powell" nor any variation thereof (including "J.L. Powell", "Josh Powell", etc.) is applied to any clothing item displayed in The Field Catalog. (*See, e.g.*, The Field Catalog at 10, 46, 63, 68)

### F.    The Field's Maine Supplier

One of The Field's suppliers is Rancourt & Co. ("Rancourt"), a shoe manufacturer located in Maine. (Compl. ¶ 52)  Nothing in The Field Catalog or any other exhibit attached to the Willard Declaration identifies Rancourt as one of The Field's partners. In connection with the supplier relationship, The Field conducted an interview with Rancourt's president in Maine. (*Id.*)  The Field's website includes a video of this interview. (*Id.*)  Rancourt's website, in turn, links to the video and mentions that Rancourt is "happy to be part of this new venture from Josh Powell, the man behind the JL Powell company." (*Id.*)  Plaintiff alleges no other connection to Maine.

### G.    Plaintiff Brings The Instant Complaint

On April 25, 2013, Plaintiff filed the instant Complaint.  In Counts I through V, the Complaint alleges that Defendants infringed on Plaintiff's "J.L. Powell" trademark in violation of the Lanham Act and Maine state law when Mr. Powell signed his name as "J. Powell" and

"Josh Powell" as the author of two articles in The Field catalog. (Compl. ¶¶ 56–85)  In Count VI, Plaintiff alleges that Mr. Powell breached the Contribution Agreement by twice signing his name in The Field catalog and by using a small image of himself in the catalog. (Compl. ¶¶ 86–89) Finally, in Counts VII and VIII, the Complaint alleges that Mr. Powell breached the Employment and Separation Agreements by retaining fabric samples and clothing designs. (Compl. ¶¶ 35–36, 48–49; Willard Decl. ¶ 27)

## III.   ARGUMENT

### A.   Plaintiff Fails To Plead A Proper Basis For The Exercise Of Personal Jurisdiction Over Mr. Powell.

The plaintiff bears the burden of persuading the court that personal jurisdiction exists. *Negron-Torres v. Verizon Commc'ns, Inc.*, 478 F.3d 19, 23 (1st Cir. 2007).  The plaintiff "cannot rest upon the pleadings but is obliged to adduce evidence of specific facts" in response to this motion. *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008).  The Court takes "specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe[s] them in the light most congenial to the plaintiff's jurisdictional claim," though it need not "credit conclusory allegations or draw farfetched inferences."  *Negron-Torres*, 478 F.3d at 23.

For this Court to exercise personal jurisdiction, Mr. Powell's Maine contacts must satisfy both Maine's long-arm statute and the Fourteenth Amendment's Due Process clause. *Glenwood Farms, Inc. v. O'Connor*, 666 F. Supp. 2d 154, 160 (D. Me. 2009).  Maine's long-arm statute is "coextensive with the outer limits of due process," so the only question is whether the exercise of personal jurisdiction meets the constitutional standards. *Id.*; *see also* 14 M.R.S.A. § 704-A(1) ("This section ... shall be applied so as to assert jurisdiction over nonresident defendants to the fullest extent permitted by the [14th Amendment].").  The constitutional analysis has three

- 6 -

elements: "relatedness, purposeful availment, and reasonableness." *Phillips*, 530 F.3d at 27. Each factor must be satisfied for this Court to exercise personal jurisdiction. *Id.*

First, the claim "must directly arise out of, or relate to, the defendant's forum-state activities." *Id.* The only contact alleged in the Complaint between the Mr. Powell and Maine involves one of The Field's suppliers, Rancourt.[1] The Complaint also alleges that Defendants traveled to Maine to meet with Rancourt, (*see* Compl. ¶ 53), and that Rancourt stated on its website that it is "happy to be part of this new venture from Josh Powell, the man behind the JL Powell company." (Compl. ¶ 52) These attenuated contacts with a Maine supplier are plainly insufficient to support personal jurisdiction over Mr. Powell.

For contract claims, the defendant's activity in Maine must be "instrumental either in the formation of the contract or its breach." *Phillips*, 530 F.3d at 27. Plaintiff does not allege that any of the agreements were negotiated in Maine, entered into in Maine, or contemplated any performance in Maine, or that Mr. Powell's alleged breaches were connected to Maine. (*See* Compl. ¶¶ 35–36, 48–49, 89) In addition, each Agreement includes a Delaware choice-of-law clause, (Contribution Agreement ¶ 12.7; Employment Agreement ¶ 8; Separation Agreement ¶ 17), and the Separation Agreement requires arbitration in Chicago, Illinois. (Separation Agreement ¶ 17) In short, Plaintiff fails to show that the contract claims are related to Maine.

Tort claims, including Lanham Act claims, are related to a defendant's forum activities "where the contacts are both a 'but for' cause and a proximate cause of the injury." *Broady v. Hoppen*, No. 12-cv-79-SM, 2012 WL 3731339, at *5 (D.N.H. Aug. 28, 2012); *see also Mass. Sch. of Law at Andover, Inc. v. ABA*, 142 F.3d 26, 35 (1st Cir. 1998). Plaintiff's trademark

---

[1] Plaintiff repeatedly refers to the relationship between The Field and Rancourt as a "partnership" and the two entities as "partners," (Compl. ¶ 52), but the Catalog nowhere mentions the term "partner" in connection with Rancourt, and Plaintiff does not allege that Rancourt is anything more than one of The Field's suppliers. (*See* Compl. ¶ 52) The Court should ignore this misleading moniker.

infringement claims focus on The Field's use of Mr. Powell's signature and likeness in its catalogs and website, but Plaintiff does not allege any connection between the catalogs or website and Rancourt.   Certainly, Plaintiff does not allege that products supplied by Rancourt bear Mr. Powell's name, image, or endorsement (nor could it, as they bear the "Rancourt" name). A single, fleeting reference to "Josh Powell" on Rancourt's website is insufficient to demonstrate that the trademark claims arise out of Mr. Powell's connection to Maine. *See PFIP, LLC v. Planet Fitness Enters., Inc.*, No. Civ. 04-250-JD, 2004 WL 2538489, at *5–6 (D.N.H. Nov. 10, 2004) (holding that use of New Hampshire supplier to produce advertising materials insufficient for personal jurisdiction over trademark claims); *see also Broady*, 2012 WL 3731339, at *5 (dismissing Lanham Act claims where plaintiffs "failed to offer specific facts showing that defendants conducted forum activities 'essential to' the alleged infringement").   Indeed, Mr. Powell had no control whatsoever over what Rancourt did on its own website.

Second, the defendant must purposefully avail himself of conducting activities in the forum state, "thereby invoking the benefits and protections of that state's laws and making the defendant's presence before the state's courts foreseeable." *Phillips*, 530 F.3d at 27.   The "focal points" of the purposeful availment analysis are "voluntariness and foreseeability." *BlueTarp Fin., Inc. v. Melloul Blamey Const. S.C., Ltd.*, 846 F. Supp. 2d 307, 317 (D. Me. 2012) (quoting *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 715 (1st Cir. 1996)).   This requirement "protects defendants from jurisdiction based solely on 'random, fortuitous, or attenuated contacts' or 'the unilateral activity of another party.'" *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

The only alleged contact Mr. Powell has with Maine is Rancourt.   "[T]he mere fact that the defendant willingly entered into a tendered relationship" with a Maine supplier is not

- 8 -

sufficient to demonstrate purposeful availment without "evidence that the defendant actually reached out to the [forum state] to *create* a relationship." *Phillips Exeter Acad. v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 292 (1st Cir. 1999) (holding that agreement to act as trustee for resident of forum state was not purposeful availment) (emphasis in original); *Sawtelle v. Farrell*, 70 F.3d 1381, 1392, 1394 (1st Cir. 1995) (holding that attorney-client relationship with forum residents was not purposeful availment).   Moreover, the reference to Mr. Powell on Rancourt's website cannot demonstrate purposeful availment because Mr. Powell had no control over Rancourt or its website.   Rancourt's "unilateral" activity cannot be the basis for personal jurisdiction over Defendants.   More importantly, while Defendants' supplier relationship with Rancourt may have made a lawsuit with its *supplier* foreseeable, it was hardly foreseeable that Defendants would be subjected to suit in Maine by *Plaintiff*.   Plaintiff fails to plead either voluntariness and foreseeability, and thus fails to plead purposeful availment.

Finally, exercising jurisdiction based on the presence of a single supplier in Maine would not comport with "traditional notions of fair play and substantial justice," *Phillips*, 530 F.3d at 27 (quoting *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945)), as captured in the "gestalt factors": "(1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." *United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1088 (1st Cir. 1992).

The second, third, and fourth gestalt factors all weigh heavily against jurisdiction.   As for the second factor, Maine has little interest in resolving a dispute between parties with no connection to Maine beyond a single relationship with a single supplier, particularly where that

5161107.1

relationship is not even at issue in this action.  Moreover, the contract claims are governed by Delaware law, and the Lanham Act claims by federal law.  The boilerplate state law claims should not even survive Rule 8, let alone present a reason for this Court to exercise jurisdiction. As for the third and fourth factors, this controversy would be resolved more efficiently in a forum with personal jurisdiction over Mr. Powell for all the Plaintiff's claims. *See PFIP, LLC v. You-Fit, Inc.*, No. 08-271-JL, 2009 WL 1121359, at *17 (D.N.H. Apr. 27, 2009) (dismissing case where personal jurisdiction was arguably met for only one of nine claims and plaintiff would have to re-file contract claims in another forum).  Indeed, an action is currently pending in the Northern District of Illinois to resolve outstanding disputes over the same contract and trademark issues in this action. (Compl., *Powell v. JL Powell Clothing LLC*, No. 1:13-cv-3537 (N.D. Ill.), attached as Ex. A)  Given these concerns, exercising personal jurisdiction over the Defendants would be unreasonable.

**B.     This Court Should Transfer This Action To The Northern District Of Illinois Under 28 U.S.C. § 1404(a) For The Convenience Of The Parties And Witnesses.**

Even if this Court had personal jurisdiction, and it does not, this case should be transferred to the Northern District of Illinois, a forum is more convenient for the parties and witnesses involved. 28 U.S.C. § 1404(a) gives a district court the authority to transfer an action "[f]or the convenience of parties and witnesses, in the interest of justice." *Multibene Ingredients Oy Ltd. v. Sturm Foods Inc.*, 658 F. Supp. 2d 250, 251–52 (D. Me. 2009).  The district court must consider the convenience of parties and witnesses, the location and availability of relevant documents, the possibility of consolidation, and the fact that a prompt trial may be available in one forum but not another. *Id.* (citing *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 11 (1st Cir. 2000)).

First, the Separation Agreement, the key contract at issue in this litigation, provided that Chicago, Illinois, is an appropriate forum for hearing disputes with Mr. Powell. (*See* Separation

- 10 -

Agreement ¶ 17)  Plaintiff cannot seek to enforce the Separation Agreement, on the one hand, but claim that Chicago is an inconvenient forum, on the other hand.

Second, the Northern District of Illinois is a more convenient forum for the parties and witnesses.  None of the parties have any presence in Maine, which cuts strongly against a Maine forum. *See Henderson v. Am. Steamship Owners Mut. Prot. & Indem. Ass'n*, No. 2:11-cv-86-DBH, 2011 WL 2194439, at *2 (D. Me. June 6, 2011) ("Neither the plaintiff nor the [defendant] has any Maine presence, and the accident and injury did not occur here."); *Edens Techs., LLC v. Kile, Goekjian, Reed & McManus, PLLC*, 671 F. Supp. 2d 170, 174 (D. Me. 2009) ("Most significantly ... [n]either the plaintiff nor the defendant resides in Maine [and] each party's employees are located outside of Maine.").  Mr. Powell resides in Michigan, Brownells is located in Iowa, and the third party that designed, printed, and shipped the allegedly infringing catalogs is located near Milwaukee, Wisconsin.  Chicago represents a geographic compromise between the Defendants and third-party witnesses. *Multibene*, 658 F. Supp. 2d at 253 ("[The] convenience of expected witnesses is probably the most important factor in ruling on a § 1404(a) motion.").  Although Plaintiff is located in California, there is little difference between a plane ride from California to Maine and one to Illinois. *See id.* (difference between travel from Finland to Wisconsin rather than Maine is slight); *Ahmed v. Mohammad*, No. 08-257-P-H, 2008 WL 4457866, at *2 (D. Me. Oct. 1, 2008) ("[I]t may safely be assumed that travel by airplane or train to Pittsburgh can be arranged more conveniently than it can be to Portland, a much smaller city.").  The Northern District of Illinois would be much more convenient for the Defendants and actually marginally more convenient for the Plaintiff.   In addition, as discussed above, a declaratory judgment action between the parties is pending in the Northern District of Illinois, so this case could be consolidated with that one to allow the parties to resolve all of their disputes.

Third, the location of documents weighs in favor of transfer. In infringement cases, the bulk of the documents are likely to come from the alleged infringer. *See Multibene*, 658 F. Supp. 2d at 253 (patent infringement).  Here, most, if not all, of the Defendants' documents are located in the Midwest, and there is no suggestion that any relevant documents are in Maine.

Finally, any comparison of the relative dockets between the District of Maine and the Northern District of Illinois is irrelevant in this case.  Even assuming *arguendo* that the case may take marginally longer to resolve in the Northern District of Illinois, "this fact alone does not justify keeping the case in this District, especially considering the fact there is no connection between the instant action and Maine." *Id.* at 255.

Plaintiff's choice to file suit in Maine deserves little deference. Although "[a] plaintiff's choice to file suit in its home forum is entitled to deference," a foreign corporation with no significant ties to the forum is not entitled to deference. *Id.* at 254.  Plaintiff's principal place of business is in California. (Compl. ¶ 1)  As such, its choice of a Maine forum is not entitled to the same level of deference that a Maine plaintiff would receive.[2]

Simply put, the Court is not "weighing two similarly situated and equally convenient (or inconvenient) forums." *Multibene*, 658 F. Supp. 2d at 255 ("If the case is transferred, the burden on Defendant will be eliminated, while the hardship of travel on Plaintiff will be only marginally increased."); *see also Ahmed*, 2008 WL 4457866, at *2 (granting transfer because it "would not merely shift the inconvenience from one party to another").  This action has no connection to Maine: there are no parties in Maine, no significant witnesses in Maine, and no relevant documents in Maine.  This case should be transferred to the Northern District of Illinois and consolidated with the action currently pending there between Mr. Powell and Plaintiff.

---

[2] Any convenience to Plaintiff's counsel is also irrelevant. *Henderson*, 2011 WL 2194439, at *2 ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)."); *see also Edens Techs.*, 671 F. Supp. 2d at 174 n.7.

**C.      Plaintiff Lacks Standing To Bring The Claims In Counts VI–VIII.**

Federal Rule of Civil Procedure 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest."  This provision means that "the action must be brought by the person entitled under the governing substantive law to enforce the asserted right." *Whelan v. Abell*, 953 F.2d 663, 672 (D.C. Cir. 1992).  "A real party in interest defense can be raised as a Rule 12(b)(6) motion, stating, in effect, that because the plaintiff is not the person who should be bringing the suit, the plaintiff has failed to state a claim upon which relief can be granted." *Id.*; *see also Magallon v. Livingston*, 453 F.3d 268, 271 (5th Cir. 2006) (recognizing that a preliminary, pre-answer objection that the plaintiff is not the real party in interest is analogous to a motion under Rule 12(b)(6));  6A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & MARY KAY KANE, FEDERAL PRACTICE & PROCEDURE § 1554 (2d ed. 2006).

Plaintiff fails to allege the existence of any contractual privity with Mr. Powell.  The Contribution Agreement, Employment Agreement and Separation Agreement are between Mr. Powell and an entity named "JL Powell LLC," <u>not</u> Plaintiff.  While the Complaint alludes to the fact that a company called "Blue Highway" purchased certain assets of JL Powell LLC and purportedly contributed those assets to Plaintiff, those facts are legally insufficient to establish that the substantive rights under these contracts were assigned to Plaintiff.

Moreover, Paragraph 12.8 of the Contribution Agreement requires the express written consent of Mr. Powell's former company JLP to JL Powell's assignment of any rights under the contract, "whether by operation of law or otherwise."  And because the Contribution Agreement involves Mr. Powell's personal services, any such assignment would be void absent the consent of Mr. Powell himself. *FinanceAmerica Private Brands, Inc. v. Harvey E. Hall, Inc.*, 380 A.2d 1377, 1380 (Del. Super. 1977).  Nowhere in the Complaint does Plaintiff demonstrate, or even suggest, that it obtained the necessary assignments and written consents from both Mr. Powell

and his former company.  Absent such well-pleaded facts, Plaintiff lacks the legal capacity to bring the breach of contract claims in Counts VI, VII, and VIII.  And any attempted joinder of JL Powell as a plaintiff would not cure this glaring pleading defect because, according to Plaintiff, JL Powell no longer possesses any rights under these contracts.  Counts VI–VIII should be dismissed with prejudice.

**D.      The Trademark Claims, Counts I Through V, Fail As A Matter Of Law.**

The "fair use" defense is an absolute defense to claims of trademark infringement, trademark dilution, and false designation of origin. *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 611–12 (6th Cir. 2009).  To successfully assert the fair use defense, an alleged infringer must demonstrate that "the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, ... of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin." 15 U.S.C. § 1115(b)(4); *see also KP Permanent Make–Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 118–22 (2004).  Under the fair use doctrine, "the holder of a trademark *cannot* prevent others from using the word that forms the trademark in its *primary* or *descriptive* sense." *Hensley*, 579 F.3d at 612 (emphasis in original).  In evaluating a defendant's fair use defense, a court must consider whether the defendant has used the mark: (1) in its descriptive sense; and (2) in good faith. *Id.*  Here, Plaintiff's own Complaint establishes that Mr. Powell's signatures to his articles were both "descriptive" in nature and "used fairly in good faith."

The affirmative defense of fair use can provide a basis for a motion to dismiss. *See Hensley*, 579 F.3d at 613 (granting motion to dismiss based on fair use doctrine).  Moreover, the First Circuit has held that a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are "definitively ascertainable from the allegations of the complaint" and they "conclusively establish the affirmative defense." *In re Colonial Mortg.*

*Bankers Corp.,* 324 F.3d 12, 16 (1st Cir. 2003).  Here, the facts Plaintiff alleged in the Complaint demonstrate that the fair use defense applies conclusively as a matter of law.

The Complaint does not allege, nor could it be amended to allege, that the term "Powell" or any variation thereof (including "J.L. Powell", "Josh Powell", etc.) is applied as a trademark to Mr. Powell's company name or any clothing that the company advertises.  Rather, the exhibits to the Complaint show that Mr. Powell named his new company "The Field," a mark that bears no resemblance whatsoever to any mark allegedly owned by Plaintiff.  The *only* uses of "Powell" contained within the Complaint and alleged to be controlled by Mr. Powell are two instances where Mr. Powell signed his name as an author of two articles entitled: "The Passion To Explore" and "The Salt." (The Field Catalog at 2, 68)  Mr. Powell signed his name to the articles as "Josh Powell" and "J. Powell," respectively. (*Id.*)

The foregoing uses of "Powell" do not qualify as use *as a trademark*.  These uses describe Mr. Powell as the author of two articles.  Put another way, Mr. Powell was simply using the only reasonably available means to describe himself as the author of an article, *i.e.*, using his name.  In doing so, he did not use an unreasonably large font to suggest to consumers that such use is anything more than his authorship status, and the name Powell is never used in a way that suggests he is the source of the goods in the catalog.  The name is not used on any clothing labels or tags and is never used within any tagline within the materials.  Rather, Powell used a conspicuously visible mark, THE FIELD, on the materials as the source identifier.

Descriptive use is evident in situations such as this "[w]here a mark incorporates a term that is the only reasonably available means of describing a characteristic of another's goods." *EMI Catalogue P'ship v. Hill, Holliday, Connors, Cosmopulos, Inc.,* 228 F.3d 56, 65 (2d Cir. 2000).  Use of a designer's name in connection with a product has been routinely held to

- 15 -

constitute fair use. *Hensley*, 579 F.3d at 613 (granting motion to dismiss based on fair use where complaint alleged that a person who sold his company and personal name trademark to plaintiff later used his personal name to identify himself as the designer of a competing product); *ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915, 920–21 (6th Cir. 2003) (holding that an artist's use of Tiger Woods's name on the back of the envelope containing the artist's print and in the narrative description of the print was "purely descriptive" and "in good faith" under the fair use doctrine); *JA Apparel Corp. v. Abboud*, 682 F. Supp. 2d 294, 313 (S.D.N.Y. 2010) ("Abboud's use of his name is the only 'reasonably available means' by which he can inform his potential customers that he is the designer of the 'jaz' line. Thus, the Court concludes that Abboud's proposed use of his name [in certain contexts] is a descriptive, non-trademark use.").

Moreover, when use of the challenged words or phrase is accompanied by a defendant's own, conspicuously visible mark, this generally does not constitute trademark use. *See Cosmetically Sealed Indus., Inc. v. Chesebrough-Pond's USA Co.*, 125 F.3d 28, 30–31 (2d Cir. 1997) (concluding that non-trademark, descriptive use is "evidenced by the fact that the source of the defendants' product is clearly identified by the prominent display of the defendants' own trademarks"); *see also Restatement (Third) of Unfair Competition* § 28 cmt. *c* (noting the relevance of the "physical nature of the use in terms of size, location, and other characteristics in comparison with the appearance of other descriptive matter or other trademarks").

Because the uses of "Powell" alleged by Plaintiff show only fair use of a name, Plaintiff fails to state a claim for relief that is "plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft* v. *Iqbal,* 556 U.S. 662, 678 (2009) (noting that the plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully"). The fact that some purported "confusion" has occurred does not trump the conclusion that its allegations

- 16 -

conclusively establish fair use.  The confusion that may result from a defendant's descriptive use of a plaintiff's mark is often viewed as "a risk entailed in the [plaintiff's] selection of a mark with descriptive attributes."  *JA Apparel*, 682 F. Supp. 2d at 310 (quoting *Car-Freshener Corp. v. S.C. Johnson & Son, Inc.*, 70 F.3d 267, 270 (2d Cir. 1995));  *see also Hensley*, 579 F.3d at 612 ("To the extent they cause some level of consumer confusion, Hensley Manufacturing assumed that risk by trademarking Jim Hensley's own personal last name.")

Finally, the Complaint contains one additional fact that allegedly supports its trademark "blurring" claims, namely that a small photograph of Mr. Powell appeared at the top of the first article. (The Field Catalog at 2)  This allegation similarly fails to state any actionable *trademark use*.  Plaintiff fails to allege that it owns any rights in this particular photograph, and, as a matter of law, it cannot allege that it owns trademark rights – or any rights – in any images associated with Mr. Powell. *See* 1 J. THOMAS MCCARTHY, THE RIGHTS OF PUBLICITY AND PRIVACY § 6145 (2d ed. 2012) ("[C]ourts have rejected claims that there can be a trademark in any and all possible images of a person."); *Pirone v. MacMillan, Inc.*, 894 F.2d 579, 583 (2nd Cir. 1990) (rejecting claim that one could own a "trademark" in images of Babe Ruth in a calendar).  Thus, there is nothing prohibiting Mr. Powell from including his photographs in advertising materials. Plaintiff's claims regarding Mr. Powell's image and likeness fail miserably as a matter of law.

**E.     Count VI Fails To State A Claim For Specific Performance.**

Count VI seeks specific performance of Paragraph 7.1(b) of  the Contribution Agreement, which provides that Mr. Powell "will not use his name or permit any other person or entity to use his name, and otherwise will not assert any right to use his name, including but not limited to any right to use his name under the doctrine of fair use, in connection with any business competitive in any respect to [JL Powell LLC] or any of its affiliates and/or subsidiaries." (Contribution Agreement ¶ 7.1(b))  This claim fails as a matter of law for several reasons.  First, the license

- 17 -

covers only permission to use Mr. Powell's name and endorsement.  So to the extent that Count VI is based on anything other than his name, it should be dismissed.  Second, as set forth in Part C above, Plaintiff is not a party to the Contribution Agreement and is not the grantee of the license, and therefore lacks standing to enforce the Contribution Agreement.

Third, the license in Paragraph 7.1(b) of the Contribution Agreement granted by Mr. Powell to JL Powell LLC was superseded by the Separation Agreement entered into between the same parties.  Specifically, Paragraph 5(b) of the Separation Agreement provides that Mr. Powell "will not take any action to interfere with the Company's use of [his] likeness, or any and all existing film and photography of [his] likeness during the calendar years of 2012 and 2013."  Paragraph 16 further provides that the Separation Agreement supersedes all prior agreements, with limited exceptions not relevant here.  Thus, by expressly permitting Mr. Powell to withdraw consent of the use of his likeness under the terms of the Separation Agreement, the exclusive and unrestrictive license provided by Mr. Powell in the Contribution Agreement was amended and superseded.  The two provisions cannot possibly be reconciled.  Indeed, if JL Powell wished for the license to continue, like Mr. Powell's restrictive covenants, it could have done so in a similar manner.  It did not.  Thus, Paragraph 7.1(b) is of no further force and effect.

Finally, because the license granted by Mr. Powell and his agreement not to license his name to a competitor was unlimited in duration, it is terminable at will. *Del. Fin. Mgmt. Corp. v. Vickers*, No. Civ.A. 96C-10-032, 1999 WL 458633, at *6–7 (Del. Super. June 9, 1999); *see also* 17B C.J.S. *Contracts* § 602 (2013) ("An agreement without a fixed term of duration generally is terminable at the will of either contracting party.").  Thus, because Mr. Powell was free to revoke this license at any time, he cannot be legally required to perform thereunder.

**F.      Counts VII And VIII Fail To State A Claim For Breach Of The Employment And Separation Agreements, Respectively.**

Plaintiff's claims for breach of the Employment and Separation Agreements are *non sequiturs*. Plaintiff lays out provisions from these agreements in great detail, but utterly fails to explain how Mr. Powell breached the provisions it cites. These claims are nothing more than placeholders for a future fishing expedition in discovery, where Plaintiff hopes to manufacture a viable claim. But as plead, they fail to meet even basic notice pleading requirements under Rule 8(a), let alone allege a plausible claim as required by *Iqbal*, 556 U.S. at 678, and *Twombly*, 550 U.S. at 570.

In the Employment Agreement, Mr. Powell agreed not to disclose confidential information, agreed to fully disclose all intellectual property he conceived of during his employment, and agreed not to compete with JL Powell LLC for one year after his termination. (Compl. ¶¶ 43–45) Plaintiff does not allege that Mr. Powell disclosed any confidential information or concealed any such intellectual property. The Complaint speculates that "[s]ometime before April 2013," Mr. Powell began doing business as "The Field," (Compl. ¶ 49), but Mr. Willard's sworn declaration states only that he learned this in "early April" and provides no further support for this conclusory allegation. (*See* Willard Decl. ¶ 27) In short, Plaintiff fails to allege a breach of the Employment Agreement.

As for the Separation Agreement, none of the representations and warranties that Mr. Powell allegedly breached created any continuing obligations for Mr. Powell. Indeed, as the Complaint recognizes, all of the representations were backward-looking and made as of the time that the Separation Agreement was executed. (Compl. ¶¶ 38–41; Separation Agreement ¶ 4(a) ("[Mr. Powell] has not knowingly retained any property"); ¶ 4(b) ("[Mr. Powell] has not engaged in competition ... or otherwise violated either the Employment Agreement or the [Inventions

- 19 -

Agreement] [and] has no current intention to violate [either Agreement]"); ¶ 4(c) ("[Mr. Powell] has not used Company trade secrets"); ¶ 4(d) ("[Mr. Powell] has neither denigrated or disparaged the Company")).  The Complaint does not allege that Mr. Powell knowingly retained any property, or had a current intention to compete at the time he entered into the Separation Agreement, or used trade secrets, or denigrated JL Powell LLC.  Consequently, there is nothing in the Complaint to support a claim for breach of the Separation Agreement.

Indeed, the only alleged breach of either agreement is that Mr. Powell retained a laptop and some fabric and clothing samples. (Compl. ¶ 35)  But Mr. Powell returned the laptop, (Compl. ¶ 36), and, more to the point, JL Powell LLC had full knowledge of these alleged transgressions, yet continued to pay severance to Mr. Powell despite this alleged breach. (*See* Compl. ¶¶ 35–36, 95)  Plaintiff has waived its right to enforce these breaches. *See Amirsaleh v. Bd. of Trade of City of N.Y., Inc.*, 27 A.3d 522, 529–30 (Del. 2011) ("It is well settled in Delaware that a party may waive contractual rights or conditions."); *AeroGlobal Capital Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444–46 (Del. 2005) (same).  Plaintiff cannot vindictively seek to enforce its rights now that Mr. Powell has lawfully begun to compete.

## IV.    CONCLUSION

Wherefore, for the reasons stated above, Defendant Joshua L. Powell respectfully requests that this Court dismiss the Complaint in its entirety without leave to amend.

Dated: May 10, 2013                          Respectfully submitted,

Joshua L. Powell, individually and d/b/a The Field Outfitting Company

By: _____/s/ Benjamin Piper_____
                    One of his attorneys

- 20 -

5161107.1

## CERTIFICATE OF SERVICE

I, Benjamin Piper, attorney for Defendant Joshua L. Powell, individually and d/b/a The Field Outfitting Company, hereby certify that on the above date, I electronically filed the foregoing document in this matter with the Clerk of Court using the CM/ECF system which will send notification of such filing electronically to the registered participants:

Nicole L. Bradick
Richard L. O'Meara
Thomas C. Newman
Murray Plumb & Murray
75 Pearl Street, P.O. Box 9785
Portland, ME 04104-5085
207-773-5651
nbradick@mpmlaw.com
romeara@mpmlaw.com
tnewman@mpmlaw.com

*Attorneys for Plaintiff JL Powell Clothing LLC*

Neal F. Pratt
Adria Yvonne LaRose
Eaton Peabody
One Portland Square, 7th Floor
Portland, ME 04101
207-430-8897
207-992-4318
npratt@eatonpeabody.com
alarose@eatonpeabody.com

Jason M. Craig
Ahlers & Cooney, PC
100 Court Avenue, Suite 600
Des Moines, IA 50309
515-243-7611
jcraig@ahlerslaw.com

*Attorneys for Defendant Brownells, Inc., also d/b/a The Field Outfitting Company*

                    /s/ Benjamin Piper
                    Benjamin Piper

5161107.1