## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| JL POWELL CLOTHING LLC and | ) | |
| JL POWELL LLC, | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA L. POWELL, | ) | Civil No. 2:13-CV-00160-NT |
| *Individually and doing business as* | ) | |
| THE FIELD, *doing business as* | ) | |
| FIELD OUTFITTING, *doing business* | ) | |
| *as* FIELD OUTFITTING COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE

Before the Court is the Defendant's motion to dismiss or transfer this action (ECF No. 49). The Court held oral argument on this motion on June 13, 2013. For the following reasons, the Defendant's motion is denied.

### Procedural History[1]

This case began on April 25, 2013, with the filing of a complaint (ECF No. 1) and motion for temporary restraining order and preliminary injunction by JL Powell Clothing LLC against Joshua L. Powell, individually and d/b/a The Field Outfitting Company, and Brownells, Inc., also d/b/a The Field Outfitting Company (ECF No. 3). The complaint alleged trademark infringement and breach of contract claims and sought specific enforcement of a contract provision. The motion for

---

[1] The names in this case are confusingly similar. The Court will refer to the Plaintiffs by their full names: JL Powell Clothing LLC and JL Powell LLC. The Defendant, Joshua L. Powell, will be referred to as "Powell." Powell's former company, JL Powell Inc., will be referred to by its full name. The catalog – once owned by JL Powell Inc. and now owned by JL Powell Clothing LLC – will be referred to as "J.L. Powell."

temporary restraining order and preliminary injunction seeks to enjoin Powell from any further use of his name and endorsement in connection with his new company. On May 10, 2013, the Defendant filed a motion to dismiss or transfer venue (ECF No. 33) arguing that the Court lacked personal jurisdiction over Powell, claiming that the complaint failed to allege that JL Powell Clothing LLC had standing to enforce the contracts at issue, and arguing that the complaint failed to state a claim. On May 31, 2013, Plaintiff JL Powell Clothing LLC filed an Amended Complaint (ECF No. 39), which added JL Powell LLC as a plaintiff and dismissed Brownells, Inc. as a defendant. The Amended Complaint eliminated the breach of contract claims and added factual allegations. On June 10, 2013, the Defendant filed a second motion to dismiss or transfer the Amended Complaint that is now before the Court.

## Background

The following facts are taken from the Amended Complaint. JL Powell Clothing, LLC is a catalog and e-commerce company that distributes the J.L. Powell catalog, which offers for sale the J.L. Powell line of high-end sportswear and accessories. Powell built the J.L. Powell catalog around his name and image. He was its sole model, and his catalogs often contained personal messages signed by him. Am. Compl. ¶¶ 8, 11.

In 2010, a group of investors organized a company called Blue Highways III LLC ("Blue Highways") to invest in and acquire J.L. Powell, Inc. *Id.* ¶ 14. A two-step contribution transaction effected the acquisition. First, Blue Highways

contributed $2.5 million to a new entity, JL Powell LLC, of which Blue Highways was the sole member. Second, JL Powell Inc. contributed all of its assets to JL Powell LLC pursuant to two agreements: a Contribution Agreement and a Bill of Sale and Assignment Agreement. *Id.* ¶ 16.

> Section 7.1(b) of the Contribution Agreement provides:
>
> In connection with this Agreement and the transfer and assignment by [JL Powell Inc.] of all [JL Powell Inc.] Intellectual Property to [JL Powell LLC], Joshua L. Powell (the "Founder") hereby grants to [JL Powell LLC] throughout the world the sole and exclusive right, license, and permission to use his name and endorsement to exploit, turn to account, advertise, and otherwise profit from [JL Powell LLC's] goods and services bearing such name, image, and/or endorsement. The grant made hereunder shall be exclusive to [JL Powell LLC], and the Founder agrees that he shall not, on behalf of himself or any other person or entity, grant any similar right of any kind in connection with any business competitive in any respect with [JL Powell LLC] or any of its affiliates and/or subsidiaries.

*Id.* ¶ 20. For this provision, Powell executed the Contribution Agreement in his personal capacity. *Id.* He also entered into an Employment Agreement with JL Powell LLC to stay on as chief executive officer. *Id.* ¶ 30.

In May of 2010, following the acquisition, JL Powell LLC filed applications with the United States Patent and Trademark Office to register the marks "J.L. Powell" and "The Sporting Life." The marks were registered on January 11, 2011, and April 5, 2011, respectively. *Id.* ¶¶ 22, 26.

On April 2, 2012, JL Powell LLC's board terminated Powell's employment, and Powell and JL Powell LLC executed a Separation Agreement and Release. *Id.* ¶ 30.

Also in 2012, JL Powell LLC defaulted on loans made to it by Blue Highways which were secured by JL Powell LLC's assets. On January 31, 2013, Blue Highways accepted all of JL Powell LLC's assets in full satisfaction of its debts. Blue Highways contributed all of JL Powell LLC's assets to JL Powell Clothing LLC, a new of which Blue Highways was the sole member. *Id.* ¶¶ 31-32.

The Amended Complaint alleges that sometime before April of 2013, Powell began a catalog and e-commerce company called "The Field," which sells high-end clothing and accessories. Sometime around the first week of April, The Field began distributing catalogs to customers nationwide, including some J.L. Powell customers. *Id.* ¶¶ 33, 34, 36. The Field also launched its e-commerce website, which allows customers to download a digital version of the catalog and order products. The website allegedly uses "JL Powell" and "the sporting life" as meta-tags.[2] *Id.* ¶¶ 35, 40.

The Amended Complaint alleges that The Field catalog and website use Powell's name, endorsement, and image to advertise and promote The Field's goods. The cover of The Field's first catalog bears the name "J. Powell." *Id.* ¶ 38. One of The Field's suppliers, Rancourt & Co. ("Rancourt"), based in Lewiston, Maine, posted on its website an interview with Michael Rancourt, President of Rancourt, which was filmed by The Field. *Id.* ¶ 49. Alongside the link to the interview was the following text: "The Field is a new catalog and ecommerce outfitter specializing in high end goods for the sporting life. We are happy to be part of this new venture

---

[2]     A meta-tag is: "An HTML tag that contains descriptive information about a webpage and does not appear when the webpage is displayed in a browser." The American Heritage Dictionary 1106 (5th ed. 2011).

from Josh Powell, the man behind the JL Powell company." *Id.* The Amended Complaint alleges that Powell permitted Rancourt to use his name on the Rancourt website and that The Field's website posted a link to the Rancourt website. *Id.*

J.L. Powell started to receive emails from customers asking whether The Field is a new J.L. Powell catalog because they noticed Powell's name and image in The Field catalog and on The Field's website. Some customers complained about the sloppy quality of The Field. *Id.* ¶ 50.

## Discussion

The Defendant moves to dismiss the Amended Complaint for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) because the Plaintiffs lack standing to bring their claims, for lack of personal jurisdiction under Rule 12(b)(2), and for failure to state a claim under Rule 12(b)(6). The Defendant also requests that this Court transfer this action to the Northern District of Illinois under 28 U.S.C. § 1404(a). The Court will address each of these arguments in turn.

## I.   Standing

The Defendant argues that the Plaintiffs lack standing to sue him. He claims that JL Powell LLC could not have assigned its rights to use his name and endorsement to JL Powell Clothing LLC, because the Contribution Agreement requires his prior written consent to any assignment of JL Powell LLC's rights. The Defendant argues that because JL Powell LLC is an empty shell, it cannot enforce the Contribution Agreement either. Finally, the Defendant argues that the

Amended Complaint insufficiently alleges JL Powell Clothing LLC's ownership of the registered trademarks "J.L. Powell" and "The Sporting Life."

### A.  Legal Standard

Federal Rule of Civil Procedure 17(a)(1) requires that actions be "prosecuted in the name of the real party in interest." "The effect of this passage is that the action must be brought by the person who, according to the governing substantive law, is entitled to enforce the right." 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1543 (3d ed. 2010).

> In an action involving an assignment, the court typically must consider two issues. First, it must determine exactly what has been assigned to make certain that the plaintiff-assignee is the real party in interest with regard to the particular claim involved in the action. . . . Second, the court must assure itself that a valid assignment has been made.

*Id.* at § 1545.

### B.  Plaintiffs' Standing to Enforce the Contribution Agreement

Even if the Defendant is correct that JL Powell LLC could not assign its rights under Section 7.1(b) to JL Powell Clothing LLC, the Amended Complaint does not allege that JL Powell LLC has been dissolved. JL Powell LLC thus still has the power to bring suits, *see* Del. Code Ann. Tit. 6, § 18-106, and has standing to enforce Section 7.1(b).

### C.  Plaintiffs' Standing to Enforce the Trademarks

The Lanham Act provides that trademarks "shall be assignable with the good will of the business in which the mark is used  . . . ." 15 U.S.C. § 1060. The Amended Complaint alleges that JL Powell LLC registered the "J.L. Powell" and "The

6

Sporting Life" trademarks. It further alleges that in January of 2013, Blue Highways accepted all of JL Powell LLC's assets in full satisfaction of loans that it made to JL Powell LLC, and that Blue Highways contributed all of the assets to JL Powell Clothing LLC. The Amended Complaint thus clearly alleges that JL Powell Clothing LLC currently owns the J.L. Powell and The Sporting Life trademarks and has standing to enforce these marks.

## II.  Personal Jurisdiction

The Defendant contends that this Court does not have specific personal jurisdiction over him because he has had insufficient contacts with Maine, and this Court's exercise of personal jurisdiction over him violates the Due Process Clause of the Fourteenth Amendment.

### A.      Relevant Law

> The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants. First, the defendant must have sufficient "minimum contacts" with the state. For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts.

*Harlow v. Children's Hosp.,* 432 F.3d 50, 57 (1st Cir. 2005). "An exercise of jurisdiction must be authorized by state statute and must comply with the Constitution. The Maine long arm statute extends 'to the fullest extent permitted by the due process clause of the United States Constitution.' This leaves us with the constitutional inquiry." *Id.* (quoting 14 M.R.S.A. § 7045-A(1)).

The Due Process Clause requires that the Court's assertion of personal jurisdiction over the defendant comply with "traditional notions of fair play and

substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Specifically, the Court's "analysis under the Due Process Clause has three distinct components: relatedness, purposeful availment, and reasonableness. An affirmative finding on each of these elements is needed to support a specific jurisdiction finding." *BlueTarp Fin., Inc. v. Matrix Constr. Co., Inc.,* 709 F.3d 72, 80 (1st Cir. 2013) (citation omitted).

The plaintiff bears the burden of proof on personal jurisdiction. *BlueTarp,* 709 F.3d at 79. "The most commonly used method of determining a motion to dismiss for want of personal jurisdiction is for the district court to consider only whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." *Boit v. Gar-Tec Prods., Inc.,* 967 F.2d 671, 675 (1st Cir. 1992). This method requires that the plaintiff make a prima facie showing that the Court has personal jurisdiction over the defendant. *Id.*

## B.    The Factors

### 1. Relatedness

"To satisfy the relatedness prong, the cause of action must arise from or relate to the defendant's contacts with the forum state." *Bluetarp,* 709 F.3d at 80. The Plaintiffs have brought causes of action for trademark infringement and specific performance of section 7.1(b) of the Contribution Agreement. These causes of action are based on: (1) the first issue of The Field catalog which bears Powell's name on the front cover and uses Powell's name and endorsement within; (2) The Field website which uses Powell's name and endorsement allows visitors to

download a digital version of the catalog and uses "JL Powell" and "The Sporting Life" as meta-tags; and (3) Rancourt's post on its website and the link on The Field website to Rancourt's post.

The Plaintiffs proffered a declaration by Peter W. Culley, a resident of Portland, Maine, who stated that on June 7, 2013, he received a copy of The Field catalog. *See* Decl. of Peter W. Culley (ECF No. 50-1) ("Culley Decl."). The cover of the catalog attached as Exhibit 1 to Culley's declaration does not contain Powell's name or endorsement, but Culley also states that he received issues of The Field catalog earlier in 2013 and discarded them. Culley Decl. ¶ 4. The Court makes the reasonable inference that Culley received the initial issue of The Field catalog that contained Powell's name and signature.

The Plaintiffs also have proffered a declaration of Joshua E. Spooner, a Maine lawyer, who visited The Field's website, looked at merchandise in the digital version of The Field catalog, and purchased an item. Decl. of Joshua E. Spooner ("Spooner Decl.") ¶ 3 (ECF No. 41). After learning that the item he purchased was out of stock, Spooner spoke to The Field on the phone and was recommended another item, which he purchased and received at his home in Topsham, Maine. *Id.* Screenshots of The Field website and the digital version of The Field catalog from April 24, 2013, are attached to Spooner's Declaration. Spooner Decl. Ex. 1, at 2-4 (ECF No. 41-1). One of the screenshots contains a small image of an issue of The Field, which has "J. Powell" on its cover. *Id.* at 2. A second screenshot, which allows the visitor to subscribe to The Field, download the digital version of The Field, and

9

sign up to receive emails from The Field, also has an image of issue one of The Field, with "J. Powell" on the cover. *Id.* at 3. And the digital version of the catalog contains the introductory message signed by Powell. *Id.* at 4.

Finally, the Plaintiffs proffered evidence that on April 9, 2013, Rancourt promoted on its website "this new venture from Josh Powell, the man behind the JL Powell company," and provided a link to The Field's website, which Rancourt removed at Powell's direction after the Plaintiffs filed suit. Decl. of Michael Rancourt ("Rancourt Decl.") ¶¶ 9, 11 (ECF No. 40-1). "The Field Daily," The Field's blog, featured the interview filmed in Lewiston, Maine at Rancourt and a link to the Rancourt website. Rancourt Decl. ¶ 7, Ex. 2, at 6 (ECF No. 40-3). And The Field catalog directed customers to "The Field Daily" for more information about Rancourt, which would lead them to the link to the Rancourt website and its reference to J.L. Powell. Rancourt Decl. Ex. 1, at 4 (ECF No. 40-2).

In *McBee v. Delica Co.,* 417 F.3d 107 (1st Cir. 2005), and *Cossaboon v. Maine Medical Center,* 600 F.3d 25 (1st Cir. 2010), the First Circuit addressed the impact of a company's website on the personal jurisdiction analysis. While the issue before the Court in *McBee* was the extraterritorial reach of the Lanham Act, its analysis drew upon personal jurisdiction case law. The Court observed:

> To put the principle broadly, the mere existence of a website that is visible in a forum and that gives information about a company and its products is not enough, by itself, to subject a defendant to personal jurisdiction in that forum.
>     Something more is necessary, such as interactive features which allow the successful online ordering of the defendant's products. The mere existence of a website does not show that a defendant is directing its business activities towards every forum where the website is

> visible; as well, given the omnipresence of Internet websites today,
> allowing personal jurisdiction to be premised on such a contact alone
> would "eviscerate" the limits on a state's jurisdiction over out-of-state
> or foreign defendants.

*McBee,* 417 F.3d at 124 (citations omitted) (quoting *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 549-50 (7th Cir. 2004)). In *Cossaboon,* the First Circuit examined Maine Medical Center's website as a basis for general jurisdiction in New Hampshire and observed that "[i]n addressing what 'more' is required to support the exercise of general jurisdiction based on website activity, courts have focused on the extent to which the defendant has actually and purposefully conducted commercial or other transactions with forum state residents through its website." *Cossaboon,* 600 F.3d at 35. The court decided that even though the hospital website had some interactive features, it did not "sell or render services online. Instead, the site is primarily informational and discusses the healthcare services provided at MMC's facility in Maine." *Id.*

In *Auburn Manufacturing, Inc. v. Steiner Industries,* 493 F. Supp. 2d 123 (D. Me. 2007), Auburn Manufacturing brought an action for false designation of origin, trademark infringement, and deceptive trade practices, among other claims, against Steiner Industries ("Steiner"), a competing manufacturer of welding supplies, and W.W. Grainger, Inc. ("Grainger"), and Lab Safety Supply, Inc. ("Lab Safety"), distributers of Steiner's products. Auburn alleged that Grainger and Lab Safety falsely advertised Steiner's products as "FM approved," a certification for products that have passed vigorous safety tests, like Auburn's products. *Id.* at 125-26.

11

Steiner and Lab Safety moved to dismiss, arguing that the court lacked personal jurisdiction over them. The court concluded that it had personal jurisdiction over Lab Safety because Lab Safety's website, which was accessible in Maine, allowed customers to purchase products, Lab Safety distributed catalogs to Maine, and Lab Safety derived 0.55% of its gross revenues from the sale of products shipped to Maine. *Id.* at 128. Uncomfortable with deciding personal jurisdiction on the basis of Lab Safety's website alone without clear guidance from the First Circuit, the court relied on Lab Safety's distribution of catalogs to Maine to find personal jurisdiction. *Id.* at 130. The court found that the relatedness prong was satisfied because Lab Safety's catalogs distributed in Maine contained the language that allegedly falsely designated the products' origin, and customers could order the products through the catalog. *Id.*

Here we have a website that does business, and has done business in one case in Maine, and distributes its catalog to customers in Maine. The Defendant argues that in *Auburn Manufacturing*, the distributers were advertising and selling allegedly infringing products to Maine, whereas here the alleged infringement is in the catalog and website and not the products themselves. This distinction is unpersuasive. The Court concludes that the Defendant's allegedly infringing conduct is sufficiently related to Maine.

## 2. Purposeful Availment

To satisfy the purposeful availment prong, a defendant's contacts with the forum state must "represent a purposeful availment of the privilege of conducting

12

activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable." *United Elec., Radio and Mach. Workers of Am. v. 163 Pleasant St. Corp.,* 960 F.2d 1080, 1089 (1st Cir. 1992). **"We have called it akin to a 'rough quid pro quo,' that is, 'when a defendant deliberately targets its behavior toward the society or economy of a particular forum, the forum should have the power to subject the defendant to judgment regarding that behavior.'"** *BlueTarp,* 709 F.3d at 82 (quoting *Carreras v. PMG Collins, LLC,* 660 F.3d 549, 555 (1st Cir. 2011)). "In the purposeful availment inquiry the focus is on the defendant's intentions, and the cornerstones are voluntariness and foreseeability." *BlueTarp,* 709 F.3d at 82 (citations omitted). In *Auburn Manufacturing*, the court found purposeful availment and explained:

> While there is no evidence that any of the Steiner products that carried the alleged false designation of origin were purchased in Maine, Lab Safety advertised, promoted, and sold its products directly through its catalogs to Maine residents. Lab Safety's catalog distribution constituted an offer to sell the falsely designated products in Maine and a purposeful invocation by Lab Safety of the benefits and protections provided by Maine. . . . Lab Safety has "availed" itself of the Maine market by virtue of its catalog distribution and in sales resulting from such catalog distribution. Therefore, it should not come as a surprise to Lab Safety that it might be haled into court in this forum based upon that activity.

*Auburn Mfg.,* 493 F. Supp. 2d at 130 (citations omitted).

The Defendant advertises its products in Maine and sells its products in Maine through its website and its catalog. The Court finds that the Defendant directed The Field catalog to Maine thus advertising and promoting its products to

13

Maine customers. The Plaintiff has proffered evidence of a sale by The Field to a Maine customer and a conversation between the Maine customer and The Field. The Field's website is interactive and permits visitors to download a digital version of the catalog, purchase products, view additional promotional content, request the catalog, and sign up to receive the catalog in the mail and emails from The Field. While the website alone is likely insufficient to establish relatedness or purposeful availment, the website plus the catalog, plus the sale, plus The Field's relationship with Rancourt is sufficient to establish purposeful availment.

### 3. Reasonableness

"The final piece of the puzzle is that an exercise of jurisdiction must be reasonable, in other words, consistent with principles of justice and fair play." *BlueTarp,* 709 F.3d at 83. The Court's determination of reasonableness is guided by the "gestalt factors." *Id.* These five factors are:

> (1) the defendant's burden of appearing, (2) the forum state's interest in adjudicating the dispute, (3) the plaintiff's interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies.

*United Elec., Radio and Mach. Workers of Am.,* 960 F.2d at 1088. Appearing in Maine does not place an undue burden on the defendant; this forum has as great of an interest as any in protecting its residents; and the Plaintiffs will obtain convenient and effective relief here. Factors four and five are neutral. The gestalt

factors do not alter the Court's conclusion that the Plaintiffs have made their prima facie showing that the Court has personal jurisdiction over the Defendant.[3]

## III.   Failure to State a Claim

Rule 8 of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief" and that "each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(a)(2) & 8(d)(1). A motion to dismiss under Rule 12(b)(6) tests whether a plaintiff has alleged sufficient non-conclusory, non-speculative facts that "plausibly narrate a claim for relief." *Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir. 2012); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). The Court takes all the complaint's well-pled facts as true and draws all reasonable inferences in the plaintiff's favor. *Schatz,* 669 F.3d at 55.

The Amended Complaint brings three federal trademark infringement claims: dilution of a famous mark under 15 U.S.C. § 1125(c), (Count I), unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), (Count II), and trademark infringement under Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1), (Count III); two state trademark infringement claims: deceptive trade practices under the Maine Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211-1216, (Count IV), and trademark dilution under the Maine Anti-Dilution

---

[3]       The ultimate burden of proving this Court's personal jurisdiction over the Defendant by a preponderance of the evidence remains with the Plaintiffs. *See* Fed. R. Civ. P. 12(i); *Boit,* 967 F.2d at 676 (denying a 12(b)(2) motion to dismiss using the prima facie standard defers final determination of the motion until trial).

Statute, 10 M.R.S.A. § 1530, (Count V); and one claim for specific performance of the Contribution Agreement (Count VI).

### A. Unfair Competition and Trademark Infringement (Counts II, III, and IV)

#### 1. Relevant Trademark Law

Section 43(a) of the Lanham Act governs claims for infringement of unregistered marks. It provides:

> Any person who, in or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which --
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person . . .
>
> Shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a)(1).

Section 32(1) of the Lanham Act governs claims for infringement of registered marks. It provides that:

> Any person who shall, without the consent of the registrant--
>
> > (a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive . . .
>
> shall be liable in a civil action by the registrant for the remedies hereinafter provided.

16

15 U.S.C. § 1114(1).

> The "false designation of origin" claim under section 43(a) is a close cousin to a claim for infringement of a federally registered mark authorized by section 32 of the Lanham Act, 15 U.S.C. § 1114. An infringement claim under section 32 requires that the mark be a federally registered trademark. But a section 43(a) claim . . . does not require that the mark or name be federally registered, and is commonly used to prevent infringement of unregistered trademarks.

*PHC, Inc. v. Pioneer Healthcare, Inc.,* 75 F.3d 75, 78 (1st Cir. 1996) (citation omitted).

Like the federal trademark infringement statutes, Maine's Uniform Deceptive Trade Practices Act, 10 M.R.S.A. §§ 1211-1216, provides injunctive relief against a person who causes a "likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of goods or services" or "as to affiliation, connection or association with, or certification by, another." 10 M.R.S.A. § 1212(1)(B)-(C); 10 M.R.S.A. § 1213 (injunctive relief).

"To succeed on a claim of trademark infringement, a plaintiff must establish (1) that its mark is entitled to trademark protection, and (2) that the allegedly infringing use is likely to cause customer confusion." *Boston Duck Tours, LP v. Super Duck Tours, LLC,* 531 F.3d 1, 12 (1st Cir. 2008); *see also KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.,* 543 U.S. 111, 118 (2004). "Both registered and unregistered trademarks may be eligible for protection against infringing uses." *Borinquen Biscuit Corp. v. M.V. Trading Corp.,* 443 F.3d 112, 116 (1st Cir. 2006). "When a party seeks protection for an unregistered trademark, it is incumbent on that party to demonstrate affirmatively that its mark is distinctive . . . . When a

17

party seeks protection for a registered trademark, its burdens are lighter. Registration is 'prima facie evidence of the validity of the registered mark.'" *Id.* (quoting 15 U.S.C. § 1115(a)).

To establish trademark infringement, a plaintiff must show "that the allegedly infringing conduct carries with it a likelihood of confounding an appreciable number of reasonably prudent purchasers exercising ordinary care." *Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO v. Winship Green Nursing Ctr.,* 103 F.3d 196, 201 (1st Cir. 1996). The First Circuit uses an eight-factor test to determine whether there is a likelihood of confusion. These factors, sometimes referred to as the "*Pignons* factors," are:

> (1) the similarity of the marks, (2) the similarity of the goods, (3) the relationship between the parties' channels of trade, (4) the relationship between the parties' advertising, (5) the classes of prospective purchasers, (6) the evidence of actual confusion, (7) the defendant's intent in adopting the mark and (8) the strength of the plaintiff's mark.

*Swarovski Aktiengesellschaft v. Building No. 19, Inc.,* 704 F.3d 44, 49 n.2 (1st Cir. 2004) (citing *Pignons S.A. Mecanique de Precision v. Polaroid Corp.,* 657 F.2d 482, 487-91 (1st Cir. 1981)).  "These factors are not to be applied mechanically. Courts may consider other factors and may accord little weight to factors that are not helpful on the particular facts of a case." *Beacon Mut. Ins. Co. v. OneBeacon Ins. Grp.,* 376 F.3d 8, 15 (1st Cir. 2004).

## 2.  The Amended Complaint's Allegations

The Amended Complaint alleges that both J.L. Powell and The Field sell and advertise high-end sportswear and accessories to a niche market. It alleges that

both companies advertise and sell their products through their catalogs and corresponding e-commerce websites. The Amended Complaint alleges that the front cover of the first issue of The Field bears the name "J. Powell," and The Field's website uses "JL Powell" and "The Sporting Life" as meta-tags. The Amended Complaint also alleges that since the first issue of The Field catalog was mailed to customers, customers have contacted JL Powell Clothing LLC asking whether The Field is a J.L. Powell catalog because they noticed that Powell's name and image appear in The Field. These factual allegations are sufficient to state a claim for trademark infringement under both federal and state law.

### B.      The Fair Use Defense

The Defendant claims that the allegations in the Amended Complaint establish that the Lanham Act's fair use defense applies. The Lanham Act provides the following defense:

> That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin . . . .

15 U.S.C. § 1115(b)(4). "[A] properly raised affirmative defense can be adjudicated on a motion to dismiss so long as (i) the facts establishing the defense are definitively ascertainable from the complaint and the other allowable sources of information, and (ii) those facts suffice to establish the affirmative defense with certitude." *Rodi v. S. New Eng. Sch. Of Law,* 389 F.3d 5, 12 (1ˢᵗ Cir. 2004). The allegations in the Amended Complaint do not establish with certitude that Powell

can avail himself of the fair use defense. The Amended Complaint alleges that Powell sold the exclusive right to use his name and endorsement to JL Powell LLC, agreed that he would not use or permit anyone else to use his name or endorsement in business competitive with JL Powell LLC, and agreed that he would not assert his right to use his name under the doctrine of fair use. The Amended Complaint does not establish the fair use defense with certitude, and the Plaintiffs' trademark infringement claims cannot be dismissed on this ground.

### B. Trademark Dilution (Counts I and V)

The Trademark Dilution Revision Act provides injunctive relief to "the owner of a famous mark that is distinctive, inherently or through acquired distinctiveness" against

> another person who, at any time after the owner's mark has become famous, commences use of a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1). It states that

> a mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner. In determining whether a mark possesses the requisite degree of recognition, the court may consider all relevant factors, including the following:
>
> > (i) The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
> > (ii) The amount, volume, and geographic extent of sales of goods or services offered under the mark.
> > (iii) The extent of actual recognition of the mark.
> > (iv) Whether the mark was registered . . . on the principal register.

15 U.S.C. §§ 1125(c)(2)(A).

Section 1125(c) defines "dilution by blurring" as "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." 15 U.S.C. § 1125(c)(2)(B).

> In determining whether a mark or trade name is likely to cause dilution by blurring, the court may consider all relevant factors, including the following:
>
>> (i) The degree of similarity between the mark or trade name and the famous mark.
>> (ii) The degree of inherent or acquired distinctiveness of the famous mark.
>> (iii) The extent to which the owner of the famous mark is engaging in substantially exclusive use of the mark.
>> (iv) The degree of recognition of the famous mark.
>> (v) Whether the user of the mark or trade name intended to create an association with the famous mark.
>> (vi) Any actual association between the mark or trade name and the famous mark.

15 U.S.C. §§ 1125(c)(2)(B).

> Maine's anti-dilution statute states:
>
> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.

10 M.R.S.A. § 1530.

The Amended Complaint alleges that the "J.L. Powell" mark was registered on January 11, 2011, and "The Sporting Life" was registered on April 5, 2011. It alleges that both marks have been used since March of 2006 to market and sell

21

goods to customers throughout the United States. And it alleges that the volume of the goods sold under the marks since 2006 is approximately $40 million. At this stage of the proceedings, these allegations are sufficient to establish that the marks are famous.

Count I asserts only dilution by blurring. The Amended Complaint alleges that the Defendant began The Field on April 9, 2013, after "J.L. Powell" and "The Sporting Life" became famous. It alleges that The Field uses "J. Powell" on its front cover, and Powell's signature appears in the issue. The Court can reasonably infer from the federal registration of "J.L. Powell" that JL Powell Clothing LLC's use of the mark has been substantially exclusive. The Amended Complaint alleges that there is no association between The Field and JL Powell Clothing LLC, and the Court can reasonably infer from Powell's use of his name, image, and endorsement in The Field Powell's intent to create an association between his new venture and his previous catalog company. Taking all the facts in the Amended Complaint as true and making all reasonable inferences in the Plaintiffs' favor, the Amended Complaint alleges sufficient facts to state a claim for trademark dilution by blurring under 15 U.S.C. § 1125(c) and dilution under 10 M.R.S.A. § 1530.

### C. Specific Performance of the Contribution Agreement (Count VI)

The Defendant argues that the Plaintiffs have failed to state a claim for specific performance of Section 7.1(b) of the Contribution Agreement because (1) Powell is not in any "business competitive" with JL Powell LLC, (2) the Contribution Agreement is unenforceable because it was superseded by later

agreements, and (3) Section 7.1(b) of the Contribution Agreement is unenforceable because it is terminable at will. These arguments are unpersuasive.

### 1. Competitive Business

In Section 7.1(b), Powell agreed:

> The grant made hereunder shall be exclusive to [JL Powell LLC], and the Founder agrees that he shall not, on behalf of himself or any other person or entity, grant any similar right of any kind in connection with any business competitive in any respect with [JL Powell LLC] or any of its affiliates and/or subsidiaries.

Am. Compl. ¶ 20. The Amended Complaint alleges that JL Powell LLC and JL Powell Clothing LLC are affiliated companies "[b]y virtue of common and overlapping ownership and control"; and it alleges that Blue Highways is the sole member of both JL Powell LLC and JL Powell Clothing LLC. The Amended Complaint also alleges that "The Field catalog and website are targeted at precisely the same customers as JL Powell—high end goods for the sporting life. The Field catalog has been distributed to some of JL Powell's customers." Am. Compl. ¶ 36. The Amended Complaint sufficiently alleges that Powell's uses of his name and endorsement in The Field are in connection with a business that is competitive with JL Powell LLC's affiliate, JL Powell Clothing LLC.

### 2. Supersession

The Defendant argues that the Plaintiffs fail to state a claim for specific performance for Section 7.1(b) of the Contribution Agreement because the Contribution Agreement was superseded by Powell's Employment and Separation Agreements. These agreements are referenced in the Amended Complaint, but the

substance of the agreements that the Defendant relies upon in his brief are not part of the Amended Complaint. For purposes of the Defendant's motion to dismiss for failure to state a claim, the Court declines to look beyond the allegations of the Amended Complaint to consider the Employment and Separation Agreements. The Court defers its consideration of the Defendant's argument that the Contribution Agreement is superseded to its decision on the Plaintiffs' motion for preliminary injunction where the Court has the benefit of a more developed record.

### 3.  Terminable at Will

The Defendant argues that JL Powell LLC cannot enforce 7.1(b) of the Contribution Agreement because it is a license of unspecified duration and therefore terminable at will, citing *Delaware Financial Management Corp. v. Vickers,* No. Civ.A. 96C-10-032, 1999 WL 458633 (Del. Super. Ct. June 9, 1999). The Defendant's argument is unpersuasive. *Vickers* stands for the proposition that a personal services contract is terminable at will.[4]   Section 7.1(b) is not an agreement for services; *Vickers* is entirely distinguishable. The Defendant refers to Section 7.1(b) as a license.  To the extent that there is authority that establishes that a license is terminable at will if of unspecified duration, the Defendant has not cited it, and the Court is not inclined to research the matter on the Defendant's behalf.

### 4.  Defendant's Motion to Transfer Venue

---

[4]      In *Vickers,* Charles and Frances Vickers contracted with Delaware Financial Management Corporation ("DFMC") to help them get financing to save their convenience stores. Their agreement with DFMC did not have a duration term and provided that DFMC would receive payment when it secured financing for the Vickers. *Id.* at *3. Ultimately, DFMC failed to find any financing for the Vickers, the Vickers sold their boat to free up some funds to save their stores and terminated their relationship with DFMC, and DFMC sued. *Id.* at *3-4. The court held that the Vickers were within their rights to unilaterally terminate the contract with DFMC because personal services contracts are terminable at will. *Id.* at *7.

Finally, the Court turns to the Defendant's motion to transfer venue. The Defendant has moved to transfer this case to the Northern District of Illinois under 28 U.S.C. § 1404(a), which states:

> For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.

Venue is appropriate in a district in which "a substantial part of the events or omissions giving rise to the claim occurred," or "if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(2)-(3). "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack,* 376 U.S. 612, 622 (1964)). The party seeking transfer to another venue bears the burden of proof, and there is a strong presumption in favor of the plaintiff's choice of forum. *Coady v. Ashcraft & Gerel,* 223 F.3d 1, 11 (1st Cir. 2000). In addition to the convenience of the parties and witness, other considerations in § 1404(a) decisions can include: (1) where the claim arose; (2) the location of evidence; (3) judicial economy; (4) the local interest of the

home forum; (5) the relative congestion of the courts;[5] (6) the first-filed rule,[6] and (7) the parties' contractual agreements.[7]

The Defendant points to the Separation Agreement, which the Defendant claims provides that the parties will subject any claim under the Agreement – except for claims by JL Powell LLC for injunctive or equitable relief – to arbitration in Chicago. Count VI is brought under the Contribution Agreement, not the Separation Agreement, and this action is for injunctive relief. The Court gives the arbitration clause in the Separation Agreement no weight in its analysis.

There is no evidence that litigating this action in Chicago will be more convenient to anyone other than the Defendant's Chicago-based counsel. Attorneys' convenience may not play a role in the Court's determination. *See* 28 U.S.C. § 1404(a). The Defendant resides in Michigan, and while certainly Chicago is more convenient to Michigan than Portland, Maine, it is not enough to overcome the Plaintiff's choice of forum. The two witnesses at the preliminary injunction hearing are Maine-based, and Maine is a convenient forum for them. Where the claim arose and the location of evidence are neutral factors, as is the home forum's interest and the relative congestion of the two districts. The Defendant has filed a mirror-image declaratory judgment action in Illinois. Def. Joshua L. Powell's Mot. to Dismiss or Transfer Am. Compl. Ex. A (ECF 33-1). Since the Illinois action was filed after the Plaintiffs filed suit here, the Court gives that action minimal weight.

---

[5]    15 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3847 (3d ed. 2007).

[6]    "'Where identical actions are proceeding concurrently in two federal courts . . . the first filed action is generally preferred in a choice-of-venue decision.'" *Coady*, 223 F.3d at 11 (quoting *Cianbro Corp. v. Curran–Lavoie, Inc.*, 814 F.2d 7, 11 (1st Cir. 1987)).

[7]    *Stewart Org.*, 487 U.S. at 29.

The Defendant's motion to transfer this action to the Northern District of Illinois is denied.

## Conclusion

The Defendant's motion to dismiss or transfer is **DENIED.**

SO ORDERED.

Dated this 9th day of August, 2013.

/s/ Nancy Torresen
United States District Judge