# Exhibit D

| Separation Agreement and Release |
|---|

## CONFIDENTIAL

WHEREAS, JL Powell LLC (the "Company") terminated the employment of Joshua L. Powell (the "Executive") on April 2, 2012 (the "Termination Date"), and

WHEREAS, the parties hereto intend to resolve any issues pertaining to the circumstances or effect of such termination;

WHEREAS, the terms of this Separation Agreement and Release (the "Agreement") will become effective upon the date the Executive duly executes the signature page herein contained (the "Effective Date");

NOW, THEREFORE, in consideration of the mutual undertakings herein contained, the parties hereto agree as follows:

1.  Cessation of Employment. The Executive's employment with the Company was terminated on the Termination Date. The Executive is no longer an officer, employee or agent of the Company. The Executive may not act on behalf of the Company, and the Executive may not bind the Company. The Executive acknowledges that he does not possess any rights or claims to any future employment with the Company, or its parents, subsidiaries, affiliates, divisions, successors and/or related companies.

2.  Accrued Benefits. The Executive will receive the following amounts (the "Accrued Benefits") within 30 days following the Termination Date, or, if later, as otherwise scheduled in any applicable policy:

    (a) any base salary accrued and unpaid as of the Termination Date; and

    (b) reimbursement of any reasonable business expenses which were incurred in performance of the Executive's duties prior to the Termination Date, subject to the provisions of the Company's expense reimbursement policy and approval by Will Dargie.

The Executive acknowledges and agrees that he is not entitled to any accrued and unused vacation pay under the Company's applicable vacation policy or otherwise. The Executive's right to continue to participate in any of the retirement, insurance and other benefit plans and programs of the Company in effect as of the Termination Date shall be determined according to the terms and provisions of such programs and plans and applicable law.

3.  Severance. Subject to the Executive's acknowledgment and acceptance of the representations and warranties of Section 4 below and compliance with the provisions of Section 5 below, the Executive shall also be eligible to receive the following:

    (a) Severance in an aggregate amount equal to the Executive's annual base salary at the rate of $150,000 per year. This severance shall be paid to the Executive in 26 bi-weekly installments in a gross amount of $5,769.23 each, which shall be reduced by:

(i) $913.30 per installment, reflecting repayment of an aggregate debt of $23,745.77 owing from the Executive to the Company and incurred by the Executive after March 10, 2010;

(ii) the amount of any Company funds, including without limitation charges to the Executive's Company credit card or advance cash for photo shoots, used by the Executive for personal purposes or personal benefit or without providing the Company with corresponding receipts and other supporting documentation to the extent such amounts have not been previously identified and recovered; and

(iii) applicable tax withholding;

all in accordance with the Company's payroll practices and procedures, on the same schedule as if the Executive was still employed by the Company, commencing no later than the second regularly scheduled payroll period following the date the Executive signs this Agreement, provided the Executive signs and returns this Agreement during the Consideration Period (defined below) and complies with Section 5 below; and

(b) Eligibility for payment of the 2012 Bonus Opportunity (as defined in the Executive's Amended and Restated Employment Agreement dated November 1, 2011 (the "EA")) on the date such bonus, if any, is paid, subject to satisfaction of the Bonus Performance Criteria (as defined in the EA), as determined by the Company in its sole discretion.

The Executive acknowledges that the Executive is not owed and will not receive or be paid any payments or benefits or other form of compensation other than as expressly set forth above. The provisions of this Section 3 shall not become effective until the Effective Date. If the Executive materially breaches or violates any of the promises or covenants set forth in Section 4, 5, or 6 of this Agreement, the Company shall have no further obligation to make the severance payments to the Executive, and shall have the right to obtain from the Executive reimbursement of any severance payments already paid to the Executive pursuant to this Agreement, in addition to any and all other rights or remedies available to the Company under this Agreement or applicable law.

4.  <u>Representations and Warranties</u>. In order to induce the Company to enter into this Agreement and in consideration of the payments and benefits provided in Section 3 of this Agreement, the Executive represents and warrants the following:

(a) The Executive has not knowingly retained any property of the Company, specifically including but not limited to, files, notes, drawings, records, product samples, business plans and forecasts, financial information, specifications, computer-recorded information, tangible property (including, but not limited to, computers), credit cards, entry cards, identification badges, and keys, or any materials of any kind that contain or embody any proprietary or confidential information of the Company (and all reproductions thereof), customer lists or any other customer information, creative materials, including, without limitation, designs for, or drawings of, garments or accessories, potential garments or accessories, or any other materials relating to the design, production or procurement of any product sold or under development during the period of Executive's employment, including fabric samples and swatches, photographs in digital or any other form, the Company's financial information and any marketing

information, including any information relating to the Company's sales or other performance based on the gathering and analysis of catalog and sales information.

(b) The Executive has not engaged in competition in violation of, or otherwise violated either the Employment Agreement or the JL Powell LLC Proprietary Information and Inventions Agreement executed by the Executive on March 8, 2010 (the "IP Agreement") and the Executive has no current intention to violate any provision of the EA or the IP Agreement.

(c) The Executive has not used Company trade secrets or Proprietary Information (as such term is defined in the IP Agreement) in violation of the EA or the IP Agreement, and

(d) The Executive has neither denigrated or disparaged the Company or any of its officers, members, directors, employees or agents (the "Company Persons"), nor made statements intended to be harmful to any such Company Persons. In consideration of the foregoing, the Company represents that it has neither denigrated or disparaged the Executive, nor made statements intended to be harmful to the Executive.

5. Obligations and Contingencies.

(a) The Executive will not be entitled to any of the consideration described in Section 3 above, unless the Executive has properly executed and returned this Agreement prior to the close of business on May 16, 2012, and has not withdrawn the Executive's Release during the applicable seven (7) day withdrawal period, such that the Release contained herein has become fully and permanently effective.

(b) The Executive will not take any action to interfere with the Company's use of the Executive's likeness, or any and all existing film and photography of the Executive's likeness during the calendar years of 2012 and 2013.

(c) The Executive's obligations under Sections 4 and 5 (the "Restrictive Covenants") of the EA, and the Executive's continuing obligations under the IP Agreement, shall remain in full force and effect, and shall be fully enforceable in accordance with the terms and conditions of the EA or the IP Agreement, as applicable, following the Executive's termination of employment with the Company and the Executive's execution of this Agreement. By signing this Agreement, the Executive (i) recognizes, acknowledges and agrees that the Executive has carefully read and fully understands the Restrictive Covenants in the EA and the IP Agreement and remains fully responsible and liable for complying with the Restrictive Covenants in the EA and the IP Agreement, and (ii) represents and warrants to the Company that, at no time prior to the Effective Date, did the Executive engage in any conduct that would breach the Executive's promises to the Company set forth in the Restrictive Covenants of the EA and the IP Agreement.

(d) Simultaneously with the execution hereof the Executive submits the Executive's written resignation as a director of the Company in the form attached hereto as Exhibit A, which resignation is effective immediately.

(e) The Executive agrees that in the future the Executive shall not, and will not direct others to, denigrate, disparage or criticize the Company or any of its Company

Persons, or make any statements otherwise intended to be harmful to the Company or Company Persons. The Company agrees that it will not, and will direct the Company Persons not to, denigrate, disparage, or criticize the Executive.

(f) The Executive acknowledges that the Executive has previously surrendered the Executive's C Units to the Company and the Executive holds no membership interest in the Company. This does not apply to any ownership interest the Executive may hold in JL Powell, Inc.

(g) The Executive has no further rights to the Special Incentive Award. However, if, from the Termination Date through March 9, 2014 (the "Forgiveness Date"), the Executive complies with the provisions of this Agreement, and the vesting provisions set forth in Section 2(c)(ii)(E),(F) and (G) of the EA, all as determined by a majority of the Company's Board of Directors, the Executive's obligations to the Company under the Promissory Note dated March 10, 2010, having a principal amount of $57,370.65 (the "Note") will be forgiven on the Forgiveness Date. If those obligations are not so forgiven, the Note shall be payable immediately in full on the next day following the Forgiveness Date.

6.      <u>Release</u>.

(a) Except for the Company's obligations pursuant to Sections 2 and 3 of this Agreement, to the broadest extent permitted by law, the Executive hereby releases and discharges the Company and its parents, subsidiaries and affiliates, and each of its and their past, present and future officers, directors, members, servants, employees, attorneys, insurers, successors, independent contractors, consultants and assigns (each a "Releasee" and collectively, the "Releasees") from any and all claims, expenses, contracts, demands, obligations, liabilities, actions, costs, debts and causes of action of every nature, known or unknown, which have existed or now exist whether in law or equity which the Executive has or had or may claim to have by reason of any and all matters from the beginning of time through the date the Executive executes this Agreement (the "Release"). These include, but are not limited to, claims or causes of action based on, or arising out of, any alleged wrongful termination, retaliation, breach of contract, breach of implied covenant of good faith and fair dealing, common law torts, breach of public policy, misrepresentation, fraud, fraudulent inducement, infliction of emotional distress, failure to pay wages or other compensation and/or discrimination or harassment based on race, national origin, marital status, sex, religion, age, sexual orientation and/or disability. The Executive specifically understands that by signing this Release, in addition to releasing any and all claims against the Company, the Executive is specifically releasing any and all rights and claims up to the Effective Date which the Executive has for alleged age discrimination under the Age Discrimination in Employment Act of 1967, as amended ("ADEA"), against the Company, its directors, officers, employees and other Releasees released in this Release. This Release shall not, however, constitute a waiver of: (a) the Executive's rights under Sections 2 and 3 of this Agreement intended to survive the Executive's termination of employment; (b) any rights to indemnification the Executive may have under the Company's governance instruments, or any coverage the Executive may have under insurance maintained by the Company relating to actions by the Executive on behalf of the Company within the scope of and during the course of the Executive's employment with the Company; or (c) any claims to enforce rights arising under the ADEA or other civil rights statute after the Effective Date.

(b) The Executive represents that there has been no filing on the Executive's behalf through the date hereof with any government agency or court of any claim, charge, or complaint against the Company or any other Releasee. The Executive agrees that the Executive knows of no bases for any claim described in the immediately preceding paragraph, and that, to the extent consistent with applicable law, the Executive shall not hereafter pursue any individual claim against any of the Releasees by filing a claim, complaint or charge with any federal, state or local court, arbitration panel or administrative agency, for or on account of anything that is the subject of this Release, and that the Executive shall indemnify the Releasees and hold them harmless for any such claim, including, without limitation, their reasonable legal fees incurred in respect of any such claim. To the extent consistent with applicable law, the Executive hereby waives any right that the Executive may have to recover any compensation or damages in any action against any of the Releasees brought by any governmental entity on the Executive's behalf or on behalf of any class of which the Executive may be a member for or on account of anything that is the subject of this Release. Notwithstanding anything to the contrary in this paragraph, nothing in this section shall be construed to interfere with the Executive's right to participate in an investigation or proceeding conducted by the EEOC or to file a charge or complaint with the EEOC. However, the consideration provided to the Executive in this Agreement shall be the sole relief provided for the claims that are released by the Executive herein. Notwithstanding anything to the contrary in this paragraph, this paragraph shall not apply to claims in respect of, and shall not prevent the Executive from seeking to enforce, any of the Executive's rights described in the last sentence of the immediately preceding paragraph.

(c) The Executive acknowledges that the purpose of this Release is to release claims, if any, that the Executive may have against any of the Releasees, and to the extent that any alleged claim is not or cannot be released under current law, the payments provided by the Company in this Agreement shall be an offset against any such unreleased claim, if any.

(d) The Executive understands that neither this Release nor anything in it or this Agreement shall be considered as any admission by the Company or any Releasee of any preexisting obligation, liability, wrongdoing or improper conduct whatsoever. The Executive understands that the Company and each Releasee denies any such obligations or improper conduct.

(e) The Executive acknowledges that the Executive has read this Release and understands its contents. The Executive acknowledges that the Executive is signing this Release voluntarily and without any coercion. The Executive acknowledges that the Executive is of sound mind and competent to manage the Executive's legal, personal and business affairs and enter into a binding agreement in this regard, and is not currently prevented from doing so by the effects of any intoxicant, drug, medication, health condition or other influence.

(f) The Executive acknowledges that the making, execution and delivery of this Release has been induced by no promises, representations, statements, warranties or agreements other than those expressed herein. The Executive understands it supersedes all prior discussions and agreements between the Executive and the Company or any representative or affiliate of the Company, whether oral or in writing. The Executive also agrees that if any provision of this Release is deemed invalid, the remaining provisions

will still be given full force and effect. This Release cannot be orally modified, orally revised, or orally rescinded, and can only be amended in a written instrument signed by both the Executive and an authorized representative of the Company.

7. <u>Company Expenses and Property</u>: The Executive represents and warrants that, at no time during the Executive's employment, did the Executive incur and/or approve of any expenses on behalf of the Company that were not reasonable, good-faith expenditures incurred and/or approved consistent with the Executive's job responsibilities.

8. <u>Confidential Information</u>. The Executive agrees not to disclose the existence or terms of this Agreement, any claims that have been or could have been raised against the Company, or any facts and circumstances underlying this Agreement, except as necessary (i) to the Executive's tax advisors or legal counsel so long as they are advised that they must keep such information strictly confidential, (ii) to taxing authorities if requested by such authorities and so long as they are advised in writing of the confidentiality provisions of this paragraph, (iii) pursuant to an order of a court or governmental agency of competent jurisdiction, or (iv) in a legal filing by which the Executive seeks to enforce this Agreement. Upon service on the Executive, or anyone acting on the Executive's behalf, of any subpoena, order, directive or other legal process (a "Legal Document") requiring the Executive to engage in conduct prohibited by this Agreement, the Executive or the Executive's attorney shall immediately notify the Company of such service, provide a copy of the Legal Document to the Company, and advise the Company of the content of any testimony or information to be provided by the Executive pursuant to such Legal Document, prior to providing any testimony or information.

9. <u>Injunctive Relief</u>. The Executive acknowledges and agrees that the Executive's promises, agreements and covenants in this Agreement are reasonable and necessary for the protection of the Company's reasonable business interests, that irreparable injury will result to the Company if the Executive breaches any such agreements or covenants, and that in the event of the Executive's actual or threatened breach of any such agreements or covenants, the Company will have no adequate remedy at law. Accordingly, the Executive agrees that, in the event of any actual or threatened breach by the Executive of any of said agreements or covenants, the Company will be entitled to immediate injunctive and other equitable relief, without bond and without the necessity of showing actual monetary damages, in addition to any and all other remedies at law or at equity which the Company may have.

10. <u>Assistance and Cooperation</u>. The Executive agrees, at all times after the Termination Date, to assist and cooperate fully with the Company and its officers, directors, employees, agents and legal counsel, in connection with the defense or prosecution of any claim, complaint, charge, action or investigation that may be made by, against or involving the Company, including without limitation relating to any proceeding before any arbitral, administrative, judicial, legislative, or other body or agency. The Executive's cooperation with the Company shall continue throughout the pendency of any such claim, complaint, charge, action or investigation. Further, the Executive promises and agrees that, in the event the Executive is subject to a valid and enforceable subpoena or court order which compels the Executive's testimony at a trial, hearing or deposition concerning the Executive's relationship with the Company or any other matter relating to the Company or any of the Releasees, the Executive will provide

reasonable and prompt notice to the Company of this fact and cooperate fully with the Company prior to and during the Executive's testimony, to the maximum extent possible, consistent with the Executive's obligation to provide truthful testimony. The Executive's cooperation in this regard shall include, but shall not be limited to, full consultation with reasonable notice, at a reasonable time, with the Company's officers, directors, employees, agents and legal counsel. The Executive further agrees that, in the event the Executive is named as a defendant in a legal proceeding resulting from, arising out of, or connected directly or indirectly with the Executive's employment with the Company, or any act, omission or conduct occurring during the Executive's employment with the Company, the Executive will provide reasonable and prompt notice of this fact to the Company. The Executive further agrees to perform all acts and execute and deliver to the Company any documents that may be reasonably necessary to carry out the provisions of this Agreement.

11.     <u>Public Statement, Announcement Or Disclosure</u>.  The Executive agrees not to make any communication, statement, announcement or disclosure to the general public regarding the terms, provisions or conditions surrounding the termination of the Executive's employment with the Company, unless such communication, statement, announcement or disclosure is agreed to in writing, in advance, by the Company.

12.     <u>Breach</u>.  To the extent permitted by applicable law, should the Executive breach this Agreement then, in addition to any other rights or remedies the Company may have in equity or at law, the Executive shall (a) forfeit the Executive's right to any future payment under this Agreement, including without limitation any unpaid severance, (b) immediately return to the Company all consideration paid to the Executive pursuant to this Agreement, including without limitation any paid severance, and (c) indemnify and hold harmless the Company from and against all damage, loss, harm or expense which the Company may suffer or incur as a result of such contest, challenge or breach, including without limitation any and all attorneys' fees incurred by the Company relating to defense or enforcement of this Agreement.

13.     <u>Severability</u>.  If any provision of this Agreement, or any portion thereof, is held by a court of competent jurisdiction to be illegal, invalid or unenforceable or to conflict with any federal, state or local law as written, such provision or portion or portions of this Agreement shall be interpreted so as to be legal, valid and enforceable; provided, however, that if the Release herein for any reason should be held invalid or unenforceable in whole or part, then the Executive agrees to execute a new release in form provided by the Company so as to provide the Company with the broadest possible release permitted by law. In any such case, the Executive shall not receive any additional compensation or payment in connection with the revision or re-execution.  If any court of competent jurisdiction shall hold any of the Executive's promises or covenants in this Agreement to be unreasonable or unenforceable in any jurisdiction because of its duration, geographic area, or otherwise, such restrictions shall be deemed reduced and narrowed to the extent necessary in the opinion of such court to make the restrictions valid, reasonable and enforceable in such jurisdiction and shall be enforced as amended to the maximum equitable extent.

14.     <u>Assignability And Binding Effect</u>.  This Agreement, and all the provisions contained herein, shall be binding upon, inure to the benefit of, and be enforceable by the Executive's heirs, beneficiaries, executors, administrators and personal representatives,

and shall be binding upon, inure to the benefit of, and be enforceable by the Company, its parent companies, any other subsidiaries of its parent companies, and its or their respective successors and assigns. This Agreement may be transferred or assigned by the Company. The Executive's obligations under this Agreement may not be delegated by the Executive and the Executive may not assign, transfer, pledge, encumber, hypothecate or otherwise dispose of this Agreement, or any of the Executive's rights or obligations hereunder, and any such attempted delegation, assignment, transfer or disposition by the Executive shall be null, void and without effect.

15. <u>Neutral Construction</u>. This Agreement shall be construed as if drafted jointly by the Executive and the Company, and no interpretation, presumption or burden shall arise by virtue of authorship.

16. <u>Entire Agreement</u>. This Agreement contains the entire understanding and agreement between the parties with respect to its subject matter, and supersedes all prior oral or written understandings and agreements relating thereto, except that (a) the terms and provisions of the Restrictive Covenants in the EA (and defined terms found elsewhere in the EA that are used to interpret, understand, implement and enforce the terms and provisions of the Restrictive Covenants of the EA), and (b) any agreements, provisions or promises by the Executive regarding confidentiality, non-disclosure of information or property, non-competition or non-solicitation shall survive and remain in force and effect. The Executive affirms that, in entering into this Agreement, the Executive is not relying upon any other oral or written promise or statement made by anyone at any time. This Agreement may not be changed or altered, except by a writing signed by both the Executive and the Company.

17. <u>Governing Law</u>. This Agreement will be governed by and construed in accordance with the laws of the State of Delaware, without regard to the choice of law principles thereof. The parties agree that any dispute, controversy or claim arising out of this Agreement, except for any action by the Company for injunctive or equitable relief (including without limitation such relief to enforce the Restrictive Covenants or the IP Agreement) which may be commenced in any court of competent jurisdiction, shall be finally settled by arbitration in Chicago, Illinois in accordance with the Commercial Arbitration Rules of the American Arbitration Association in effect on the date of this Agreement and judgment upon the award may be entered in any court having jurisdiction thereof.

18. <u>Captions</u>. Captions used herein are for convenience of reference only and shall in no way affect interpretation of this Agreement.

19. <u>Counterparts</u>. This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together shall constitute one and the same instrument.

20. <u>Knowing and Voluntary Agreement</u>. The Executive acknowledges and agrees that the Executive has had a full opportunity to review the terms and provisions of this Agreement and that the Executive enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other party to this Agreement other than those specifically set out herein and that the Executive understands this Agreement

constitutes a final and complete release of all claims against the Company, regardless of their kind or character, including any possible claim which might be discovered in the future, arising out of the factual basis or allegations of any lawsuit either previously filed or filed in the future.  By executing this Agreement, the Executive represents and agrees that the Executive has carefully read and fully understand all the provisions of this Agreement, and that the Executive is knowingly and voluntarily entering into this Agreement.

21.     <u>Opportunity for Review With Counsel</u>.  The Company hereby advises the Executive in writing to talk with the Executive's attorney before executing this Agreement. The Executive expressly acknowledges that the Executive has been advised to consult with an attorney prior to signing this Agreement.  By executing this Agreement, the Executive represents, acknowledges and agrees that the Executive fully understands the Executive's right to discuss all aspects of this Agreement with the Executive's own attorney, that to the extent the Executive wanted to talk to an attorney the Executive has availed the Executive of that right, that the Executive has carefully read and fully understands all the provisions of this Agreement, and that the Executive is knowingly and voluntarily entering into this Agreement.  The Executive further represents, acknowledges and agrees that the Executive enters into this Agreement after appropriate investigation and consideration of the meaning and effect of the terms of this Agreement and without reliance upon any representation of any other party to this Agreement other than those specifically set out herein, and that the Executive understands this Agreement constitutes a final and complete release of all claims against the Company, regardless of their kind or character, including any possible claim which accrued prior to the date the Executive executes this Agreement, but is discovered in the future.

[*The rest of this page has been intentionally left blank*]

22.  Consideration Period. The Executive understands and acknowledges that the Executive have been given until the close of business on May 16, 2012 to consider the terms of this Agreement and sign this Agreement (the "Consideration Period"). If the Executive has not signed and returned this Agreement to the Company prior to the close of business on May 16, 2012, then the Company's offer to provide the Executive with the payments and benefits set forth in this Agreement shall automatically be withdrawn and rendered null and void.

Very truly yours,

By: /s/ William V. Dargie

William V. Dargie, Chief Financial Officer and Chief Operating Officer

The Executive expressly acknowledges, represents and warrants that (1) the Executive has read this Agreement carefully, (2) the Executive fully understands the terms, conditions and significance of this Agreement, (3) the Company recommends that the Executive consults with an attorney before entering into this Agreement, (4) the Executive has had a full opportunity to review this Agreement with an attorney, if the Executive wished to do so, (5) the Executive understands that this Agreement when signed will have binding legal effect, (6) the Executive is executing this Agreement freely, knowingly and voluntarily, and (7) by the Executive's signature below, the Executive accepts and will be bound by this Agreement in all respects.

_____
Joshua L. Powell

Date: 5/14/12

Exhibit A

LETTER OF RESIGNATION

May 14, 2012

Bruce Willard
Chairman
JL Powell LLC
16860 Three Oaks Road
Three Oaks, Michigan 49128

Dear Bruce:

Effective as of the close of business on May 14, 2012, I hereby resign from the director position I hold with JL Powell LLC.

Sincerely,

Joshua L. Powell

cc: Stephan G. Bachelder, Esq.